Cook Associates, Inc., Plaintiff-Appellee, *v.* Colonial Broach & Machine Company, Defendant-Appellant.

(No. 57350;

First District (5th Division)—October 5, 1973.

Wilson & McIlvaine, of Chicago, (Paul S. Gerding and Thomas A. Polachek, of counsel,) for appellant.

Berger, Newmark & Fenchel, of Chicago, (Harry D..Lavery, of counsel,) for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

Defendant, a Delaware corporation doing business in Michigan, hired an employee, Dean Averbeck, who had been referred to defendant a year earlier by plaintiff, an Illinois employment agency. When plaintiff filed suit in Illinois to recover the fee for its services, defendant filed a special appearance and motion to quash service of summons alleging that the court had no jurisdiction over its person. This motion was denied, and a trial on the merits was conducted. Defendant made a motion for judgment at the close of plaintiff's evidence, and, after the jury rendered a verdict in favor of plaintiff, a post-trial motion for judgment notwithstanding the verdict, but these motions, too, were denied. Defendant now appeals from the judgment entered against it and from the denial of the three motions described. Defendant raises two issues on appeal: (1) the Circuit Court of Cook County did not have in personam jurisdiction over defendant; and (2) Michigan law, which requires that an employment agency contract be in writing, governed the agreement between the parties and, therefore the contract involved is not enforceable.

There is no dispute over the essential facts. Plaintiff is a private employment agency incorporated in Illinois with its place of business in Chicago. Plaintiff places men only in executive positions paying $15,000 or more. Personnel placement in these higher-paid positions can be very sensitive, and, at times, prospective employers can supply the employment agency with only the qualifications of the needed employee without being able to name the particular job available. With executive placements, it is not unusual for there to be a lag between the time the applicant is referred to an employer and the time he is hired by that employer. In all instances, the fee for plaintiff's referral services is paid by the prospective employer, not the applicant placed. Although plaintiff's policy was that a referral would be applicable to a placement for

a two-year period, such policy was not printed on its fee schedule in effect at the time of the referral involved, but was added to the schedule April 1, 1968. Plaintiff's fee schedule is on file with the Illinois Department of Labor. It is not plaintiff's custom to have the applicant sign a contract with the agency.

In December, 1967, Dean Averbeck, a resident of Wisconsin, responded to an advertisement placed by plaintiff in "Metal Working News," a business journal in the field of machine tools. This he did by sending a resume to Robert Danon, an employment counselor and research man with plaintiff agency, and telling him that he was looking for new employment. A week later Averbeck came to plaintiff's office in Chicago for an interview with Danon. Danon explained to Averbeck that the agency would work with him, and that the agency expected to be advised by Averbeck of all interviews he had with employers to which plaintiff might refer him. Danon made out a resume which represented Averbeck as a sales manager and which contained Averbeck's personal data and educational and employment background. This "flyer" was sent to prospective employers in the machine tool industry, and by way of a large mailing, along with the resumes of 3000 other applicants, to prospective employers in the metal working industry in general. Both mailings went to companies located throughout the United States.

Defendant is a manufacturing company which, as stated above, is incorporated in Delaware, with its place of business in Michigan. Defendant is not registered as a foreign corporation in Illinois, does not maintain offices in Illinois, is not listed in the Illinois telephone directory, and none of its employees resides in Illinois.

On January 23, 1968, E. H. Jones, Executive Vice-president of defendant company, telephoned Danon and expressed an interest in the man represented by code number RD390 [Averbeck]. He asked for the man's name, the name of his employer, and his earnings at that time. Before giving this information to Jones, Danon advised him that plaintiff was licensed to operate its agency only if the employer were to pay the referral fee upon hiring the job applicant. Jones indicated that such an arrangement would be agreeable to him. According to Danon's testimony, he also told Jones that the referral was good for two years, and that the employer would have to pay the applicant's interview and relocation expenses if the applicant were hired. Jones requested a copy of Averbeck's resume and asked Danon to have Averbeck call him for an interview the next time he was in the Detroit area. In response to Danon's question as to the type of job which defendant had available, Jones said, "something in sales."

That same day, Danon called Averbeck at his home in Wisconsin and

learned that Averbeck was in Lansing, Michigan looking for employment in that area. The next morning, Danon called Averbeck in Lansing and told him to call defendant and arrange an interview. Danon then called Jones to say that Averbeck was in the Detroit area and would be telephoning him later that day.

On January 25, 1968, Danon sent Averbeck's resume to Jones and enclosed a copy of plaintiff's fee schedule. On March 12, 1968, Danon called Averbeck to check various referrals with him and was told that he had not yet had an interview with defendant. On March 18, 1968, Danon called Jones, who stated that he had not yet interviewed Averbeck.

However, Averbeck had, in fact, been interviewed by defendant on January 24, 1968, but was not hired at that time. On January 18, 1969, a year later, defendant contacted Averbeck to return for another interview. Averbeck was hired on January 30, 1969, and began to work for defendant on March 3, 1969. He started in the Sales Department at $17,000 per year with the understanding that he would be made a Sales Manager at a later date. His salary was subsequently increased to $18,000 per year. He left the firm in January, 1971.

On December 9, 1969, Averbeck called Danon to inform him that he was considering a change in jobs and incidentally advised him that he had started to work for defendant on March 1, 1969, after defendant had offered him a job as a sales manager at $18,000 per year. He was unhappy with the company, however, and wanted to relocate in either Cleveland or Chicago.

Danon sent Averbeck his old resume to be updated, and when it was returned, it bore the notation in Averbeck's handwriting, "3/1/69 to present, Colonial Broach & Machine Company, Warren, Michigan, sales manager."

On January 6, 1970, Danon called Jones to say that he was glad Averbeck had been hired and that defendant must have overlooked plaintiff's fee. Jones agreed that Averbeck had been contacted, interviewed, and hired due to plaintiff's services, but that Averbeck, when interviewed, had denied being represented by plaintiff. When Danon stated that plaintiff had, indeed, represented Averbeck at the time of the referral for the original interview in January, 1968, Jones replied that he would talk to his people and call back the next day. On January 7, 1970, when Jones did not call back, Danon had an invoice prepared and sent it to defendant. Plaintiff's fee was computed on the basis of 1% per each $1000 of Averbeck's starting annual salary. Since Jones had told Danon, in their telephone conversation of January 6, 1970, that Averbeck's starting an-

nual salary had been $16,000, the fee billed was 16% of $16,000 or $2560. The bill was never paid, and plaintiff brought suit. [It was later confirmed that Averbeck's starting annual salary had been $17,000, and the complaint was amended to state that fact and to increase the amount prayed for to 17% of $17,000 or $2890 plus interest.]

Defendant first contends that the trial court did not acquire jurisdiction over its person by way of Section 17 of the Illinois Civil Practice Act, known as the Illinois "long-arm" statute (Ill. Rev. Stat. 1969, ch. 110, par. 17), and that, therefore, Judge Shamberg first erred in denying its motion to quash service of process and dismiss the suit, and Judge Goldstein erred again in denying its subsequent motion for judgment in its favor.

The "long-arm" statute provides, in pertinent part, that a non-Illinois resident submits himself to the jurisdiction of the Illinois court by "the transaction of any business within this State." (Ill. Rev. Stat. 1969, ch. 110, par. 17(1)(a).) Defendant asserts that by merely telephoning plaintiff in response to an unrequested solicitation sent to it in Michigan by plaintiff, its conduct did not amount to a "transaction of any business" within the meaning of the statute, and that therefore it cannot be subjected to the jurisdiction of the Illinois courts without a violation of due process.

■■ As noted by the supreme court in *Nelson v. Miller*, 11 Ill.2d 378, 143 N.E.2d 673, Section 17 of the Civil Practice Act, which that court held to be valid, reflected the legislative intent to assert jurisdiction over non-resident defendants to the extent permitted by the due process clause. Due process requires only that before an Illinois court can acquire in personam jurisdiction over a non-resident defendant, that defendant must have had certain minimum contacts with Illinois such that maintenance of the suit in this state does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154; *Kolman v. National Racing Affiliates, Inc.*, 64 Ill.App.2d 61, 212 N.E.2d 313.

■■ Personal jurisdiction over a non-resident does not depend upon the physical presence of the defendant within the state; it is sufficient that the act or transaction itself has a substantial connection with the forum state. (*Gray v. American Radiator and Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761; *Koplin v. Thomas, Haab & Botts*, 73 Ill.App.2d 242, 219 N.E.2d 646.) It is also sufficient if the non-resident defendant's contact with the state involves only a single business transaction. *Ziegler v. Hodges*, 80 Ill.App.2d 210, 224 N.E.2d 12.

Reviewing the facts of this particular case, plaintiff initiated the con-

tact between the parties by sending to defendant a "flyer" regarding available job applicants. However, the mailing of the "flyer" represented only an offer to do business, and defendant was under no obligation to respond. It was defendant, then, who initiated the business transaction in question by telephoning plaintiff and requesting that plaintiff divulge the name of a possible prospective employee whose partial identification had been gleaned from the "flyer." Defendant also asked plaintiff to send defendant a resume of that applicant, and notify him to contact defendant for an interview. In the same conversation, a contract was created when defendant agreed that, in return for plaintiff's services, it would pay plaintiff's fee if it were subsequently to hire the applicant.

■■ An employment agency's business is to put a prospective employee in touch with a prospective employer, and the agency's services end once the two principals are made aware of each other's identities so that negotiations can be commenced between them. Although defendant's only contact within this state was a telephone call, that call was all that was necessary for defendant to achieve its purpose. Once defendant informed plaintiff that it was interested in a certain person to fill a position and agreed to pay plaintiff's referral fee if it eventually hired that person, defendant knew, or should have known, that it had entered into a contract with an Illinois agency, that the agency would perform its services from its office in Illinois, that the fee, if due, would be paid to plaintiff in Illinois, and that if the fee were not paid as promised, defendant might be liable to suit in the Illinois courts.

■■ We find that the necessary jurisdictional minimum contacts for the purposes of in personam jurisdiction over this defendant resulted from that single business transaction between the parties, and we are of the opinion that this conclusion does not violate notions of fair play and substantial justice in requiring defendant to defend this suit in the Illinois courts.

At the time of oral argument in this case, defendant cited an opinion of a federal judge (Northern District of Illinois) in *U.S. Railway Equipment Co. v. Port Huron and Detroit R.R. Co.*, holding that the Illinois "long-arm" statute had not served to bring the defendant into court for in personam jurisdiction. We have studied that opinion and believe it is distinguishable on the facts from the case at bar.

Defendant contends, however, that even if Illinois courts had properly acquired in personam jurisdiction over defendant, the court erred in denying its motions for judgment in its favor because the contract, under Michigan Law, was unenforceable because plaintiff was not licensed in

Michigan as an employment agency and the contract between the parties was not in writing.[*]

Although plaintiff questions whether a non-resident employment agency must first obtain a license in Michigan before referring a job applicant to a Michigan employer, we need not reach that issue as we find that Illinois law is applicable to construction of the contract between the parties and resolution of the instant case.

■■ Under Illinois law, if a contract is made in one state with the intention that it be performed in another, and the states are governed by different laws, the law of the place where the contract is to be performed will control as to the contract's validity and will prevail over the law where the contract was entered into. (*George V. Haas*, 311 Ill. 382, 143 N.E. 54; *Oakes v. Chicago Fire Brick Co.*, 388 Ill. 474, 58 N.E.2d 460.) The contract in question, providing for payment by defendant in exchange for services rendered by plaintiff, was oral, and the parties did not specify in their telephone conversation as to where the services were to be performed. However, as previously mentioned herein, the nature of the contract was such that both parties knew plaintiff's services would be performed from its office in Illinois. The fact that the interviewing and hiring took place in Michigan is of no consequence since the services which were the basis of the contract and for which defendant would be liable for payment to plaintiff had already been performed in Illinois. Therefore, since Illinois is the state where the contract was to be performed, and the contract is valid and enforceable under Illinois law, the trial court did not err in denying defendant's motions for judgment in its favor.

■■ It should also be noted that we are dealing with a contractual situation and, therefore, with obligations voluntarily undertaken. That fact, in itself, creates a presumption in favor of applying the law of the state which would validate the contract. (*Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, rehearing denied, 366 U.S. 941, 81 S.Ct. 1657.) Since the contract, under defendant's analysis, would have been unenforceable under Michigan law, the trial court, as an additional ground for its decision, could properly have presumed that the parties intended

---

[*] *Mich. Stat.* 17.393 "No person shall open, operate or maintain an employment agency in the state of Michigan without first procuring a license from the state superintendent of private employment bureaus * * *."

*Mich. Stat.* 17.406 "Every employment agent licensed under class 2 [the appropriate class for employment agencies placing executives] shall enter into a written agreement with every employee, employer, or both, for service to be rendered for which a charge is to be made * * *."

to enter into a valid and enforceable agreement, necessarily in this case involving the application of Illinois law.

The judgment of the circuit court is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.