**ENVIRONMENTAL RESEARCH INTERNATIONAL, INC., Appellant,**

v.

**LOCKWOOD GREENE ENGINEERS, INC., and Penn Dye and Finishing Co., Inc., Appellees.**

No. 7860.

District of Columbia Court of Appeals.

Argued En Banc Sept. 30, 1975.

Decided March 26, 1976.

---

Barry J. Nace, Washington, D. C., for appellant.

Jules G. Korner, III, Washington, D. C., with whom Murray S. Simpson, Jr., Washington, D. C., was on the brief, for appellees.

Before REILLY, Chief Judge and KELLY, FICKLING, KERN, GALLAGHER, NEBEKER, YEAGLEY, HARRIS and MACK, Associate Judges.

HARRIS, Associate Judge:

On May 23, 1975, by a vote of 2–1, a division of the court released an opinion in this case reversing the trial court's order which had granted appellees' motion to quash service of process and dismiss appellant's complaint on the ground that the court lacked in personam jurisdiction over the appellees. 339 A.2d 390, D.C.App. On July 10, 1975, we granted appellees' petition for a rehearing en banc and vacated the May 23 decision. The case since having been reargued and reconsidered en banc, we now hold that the judgment of the trial court was correct and affirm.

This case presents another question as to the permissible reach of the District of Columbia's "long-arm statute". D.C.Code 1973, § 13–423(a)(1). It arose in the following factual context. In the spring of 1971, appellee Lockwood Greene Engineers, Inc. (Lockwood Greene), a Massachusetts corporation with its principal place of business in South Carolina, was engaged in negotiations with appellee Penn Dye and Finishing Co., Inc. (Penn Dye), a Pennsylvania corporation, to provide engineering services concerning the treatment of industrial waste created at Penn Dye's textile processing plant in Pine Grove, Pennsylvania. Appellant Environmental Research International, Inc. (Environmental Research), a professional consulting firm incorporated in the District of Columbia, contacted Lockwood Greene in South Carolina and offered to assist it in its Penn Dye project by collecting data from which to prepare a construction grant application to be submitted to the Environmental Pro-

tection Agency (EPA) and by assisting in processing the grant through the EPA. An agreement was made, and appellant apparently performed various services for appellees, including the analysis of data and the preparation of memoranda and an application for funding from the EPA.

In July of 1973, appellant brought an action against appellees in the Superior Court of the District of Columbia, claiming a breach of contract and seeking the value of the services performed. Appellant asserted that D.C.Code 1973, § 13–423(a)(1) gives the courts of the District of Columbia personal jurisdiction over the nonresident defendants because they were "transacting business" in the District within the meaning of the statute.[1] Appellees moved to quash service of process and dismiss the complaint for lack of personal jurisdiction; that motion was granted.

■ The full reach of the District of Columbia's relatively new long-arm statute has not been defined.[2] However, the legislative history of the act makes it clear that it was Congress' intent to provide the District with a long-arm statute equivalent in scope to those already in effect in Maryland and Virginia.[3] Therefore, to the extent that the courts of our neighboring jurisdictions have spoken on the reach of their long-arm statutes, we welcome their guidance. In interpreting their statutes, the courts of both Maryland and Virginia have concluded that they permit the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States

---

1. D.C.Code 1973, § 13–423(a)(1) provides in pertinent part:
    (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
    (1) transacting any business in the District of Columbia.
    &ast;&ast;&ast;&ast;&ast;

2. The statute was part of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Act of July 29, 1970, Pub.L.No.91–358, 84 Stat. 473, which became effective on February 1, 1971.

3. See S.Rep.No.405, 91st Cong., 1st Sess. 35 (1969); H.R.Rep.No.907, 91st Cong., 2d Sess. 61 (1970). See also Margoles v. Johns, 157 U.S.App.D.C. 209, 483 F.2d 1212 (1973).

Constitution.[4] We reach a similar conclusion as to our statute.

■ The outer limits of jurisdiction consistent with the due process clause have been demarcated by the Supreme Court principally in three cases: *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). To satisfy the requirements of due process, the nonresident defendant must have had sufficient "minimum contacts" with the forum state to justify subjecting him to the exercise of personal jurisdiction by its courts. No easily-administered formula exists by which to measure whether the defendant's contacts are sufficient to sustain jurisdiction. Rather, the jurisdictional issue must be resolved on a case-by-case basis, noting in each the particular activities relied upon by the resident plaintiff as providing the supposed basis for jurisdiction.[5]

■ Before discussing whether the activities of appellees within the District of Columbia constituted the minimum contacts necessary to subject them to the jurisdiction of our courts, we note the trend toward liberalization of jurisdictional limitations. Even a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here. However, to recognize that trend is not to suggest that restraints upon jurisdictional authority now are nonexistent, or that the inquiry into the extent of a defendant's contacts with the forum state is an empty process. A meaningful assessment of the defendant's activities is constitutionally mandated. As the Supreme Court stated in *Hanson v. Denckla, supra*, 357 U.S., at 251, 78 S.Ct., at 1238, 2 L.Ed. 2d, at 1296:

> [T]he requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff*, [95 U.S. 714, 24 L.Ed. 565] to the flexible standard of *International Shoe Co. v. Washington* . . .. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. . . . Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him. [Citations omitted.]

Our examination of the facts in this case convinces us that the totality of appellees' contacts within the District of Columbia falls short of satisfying due process requirements, and that the action against them may not be maintained here. The affidavits submitted by the parties indicated that: (1) both appellees are incorporated under the laws of other states; (2) neither appellee is authorized to do business in the District; (3) neither appellee maintains an office, an agent, or any employees in the District; and (4) appellees perform no aspect of their work, nor do they solicit any work, in the District of Columbia. The only contacts appellees reasonably could be said to have had within the District of Columbia were those which they had with

4. See *Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 180 S.E.2d 664 (1971); *Groom v. Margulies*, 257 Md. 691, 265 A.2d 249.

5. The dissent places considerable reliance upon *McGee v. International Life Ins. Co., supra*. However, the facts of that case limit its relevance to the general principles enunciated therein by the Supreme Court. The California long-arm statute involved in *McGee* was specific in providing for jurisdiction over out-of-state insurance companies having policy holders in California.

appellant and with the EPA. The jurisdictional significance of those respective contacts will be examined in turn.

It is undisputed that appellant initiated the relationship between it and appellees. It did so by visiting Lockwood Greene in South Carolina. No negotiations were conducted in the District of Columbia. Penn Dye's contacts with appellant were limited to a few letters and telephone calls, as well as some discussions with appellant concerning the progress of the waste treatment project. Except for two visits to the District of Columbia to meet with EPA officials, no personnel of the appellees were physically present within the jurisdiction.

■ Appellant does not assert that the limited correspondence or telephone communications engaged in between it and the appellees satisfy the constitutional requirement for in personam jurisdiction. Rather, the thrust of appellant's argument is that since *it* was performing services in the District of Columbia for the benefit of appellees, its own activities here constituted a proper basis for the exercise of personal jurisdiction over appellees. To accept such a position would be effectively to remove

any protection which the due process clause affords a nonresident defendant. The position for which appellant argues has been rejected by the Supreme Court:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protection of its laws.[6] [Citations omitted.]

■■ Thus, a plaintiff cannot rely on its own activities, rather than those of a defendant, to establish the requisite minimal contacts for personal jurisdiction.[7] The mere fact that a nonresident has retained the professional services of a District of Columbia firm, thereby setting into motion the resident party's own activities within this jurisdiction, does not constitute an invocation by the nonresident of the benefits and protections of the District's laws.[8]

6. *Hanson v. Denckla, supra,* at 253, 78 S.Ct. at 1239, 2 L.Ed.2d at 1298. *See also Anderson v. Shiflett,* 435 F.2d 1036, 1038 (10th Cir. 1971); *Piracci v. New York City Employees' Retirement System,* 321 F.Supp. 1067, 1073 (D.Md.1971).

7. Section 13–423(a)(1) contemplates the exercise of personal jurisdiction over defendants who transact business here "by an agent" as well as directly. At the hearing before the trial court on the jurisdictional motion, the parties presented conflicting positions on whether appellant was an agent or an independent contractor with respect to appellees. Appellees argued that appellant was an independent contractor whose acts did not constitute those of the appellees for jurisdictional purposes. *See Read v. LaSalle Extension University,* 81 U.S.App.D.C. 177, 156 F.2d 575 (1946). Appellant claimed it was appellees' agent for purposes of obtaining an EPA grant. The trial court found that Environmental Research was an independent contractor and not an agent. The

record supports the trial court's conclusion by failing to reveal that degree of control by appellees over appellant's actual performance of its functions which would be necessary for an agency relationship. Since the trial court's judgment on that issue is supported by the evidence, it is binding upon us. D.C. Code 1973, § 17–305(a).

8. Our conclusion on this point is buttressed by *Geldermann & Co., Inc. v. Dussault,* 384 F.Supp. 566 (N.D.Ill.1974), in which an Illinois broker in commodities futures sought to bring suit against a Wyoming client in Illinois. Despite plaintiff's argument to the contrary, the court found the fact that the feeder cattle futures which plaintiff had purchased for defendant were purchased at the Chicago Mercantile Exchange to be without jurisdictional significance. Noting that the Chicago exchange was the only commodities exchange on which such futures were available, the court concluded:
   [T]he fact that defendant's requests with respect to feeder cattle contracts could

Nor can the visits by certain of appellees' personnel to the District of Columbia to consult with officials of the EPA concerning the possibility of a grant constitute the transaction of business here. This is so because of the long-standing and still vital doctrine that entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction.[9] This so-called "government contacts" principle first was articulated in *Mueller Brass Co. v. Alexander Milburn Co.,* 80 U.S.App.D.C. 274, 152 F.2d 142 (1945), when the predecessor of our present long-term statute was in effect.[10] In our view, however, Congress did not intend to set aside that principle when it enacted the present long-arm statute. *Accord, Siam Kraft Paper Co. Ltd. v. Parsons & Whittemore, Inc.,* 400 F.Supp. 810 (D.D.C.1975); *cf. Margoles v. Johns,* 157 U.S.App.D.C. 209, 219, 483 F.2d 1212, 1222 (1973). The rationale for the "government contacts" exception to the District of Columbia's long-arm statute does not hinge upon the wording of the statute. Rather, it finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry.[11] To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.[12]

Our dissenting colleagues take the position that *Mueller Brass* and its progeny are inapposite to the instant case, since in them the claims for relief which were asserted against the nonresident defendants did not arise from the nonresidents' activities in the District, whereas in this case the claim does arise from activities conducted here on behalf of appellees. *See* D.C.Code 1973, § 13–423(b). However,

---

only be met by executing transactions on the Chicago Mercantile Exchange cannot be viewed as an act by defendant by which he purposely availed himself of the benefits of the law of Illinois. [384 F.Supp. at 572 (citations omitted).]

So, too, in the instant case were a number of appellant's contractual duties necessarily performed here, for this is where the EPA is located.

9. *See Weisblatt v. United Aircraft Corp.,* D. C.Mun.App., 134 A.2d 713 (1957); *Fandel v. Arabian American Oil Company,* 120 U.S. App.D.C. 193, 345 F.2d 87 (1965); *Traher v. De Havilland Aircraft of Canada, Ltd.,* 111 U.S.App.D.C. 33, 294 F.2d 229 (1961), *cert. denied,* 368 U.S. 954, 82 S.Ct. 397, 7 L.Ed.2d 387 (1962); *Mueller Brass Co. v. Alexander Milburn Co.,* 80 U.S.App.D.C. 274, 152 F.2d 142 (1945); *Siam Kraft Paper Co. Ltd. v. Parsons & Whittemore, Inc.,* 400 F.Supp. 810 (D.D.C.1975). *See also Margoles v. Johns, supra* note 3; *Layne v. Tribune Co.,* 63 App.D.C. 213, 71 F.2d 223, *cert. denied,* 293 U.S. 572, 55 S.Ct. 83, 79 L.Ed. 670 (1934); *Neely v. Philadelphia Inquirer Co.,* 61 App.D.C. 334, 62 F.2d 873 (1932).

10. Under the prior long-arm statute, in personam jurisdiction could be exercised over a nonresident if he was "doing business" here. The "doing business" criterion of the earlier statute was amended to "transacting any business," thereby demanding a less systematic and continuous course of conduct by a defendant.

11. We believe, although we need not so hold, that had Congress intended to abrogate the *Mueller Brass* principle in enacting the present long-arm statute, it thereby would have been placing an impermissible burden on the First Amendment "right of the people . . . to petition the Government for a redress of grievances."

The Fifth Circuit has recognized that the ordinarily liberally-construed minimum contacts requirement of state jurisdictional statutes must yield when the assertion of jurisdiction based upon such minimum contacts threatens the free exercise of First Amendment rights. *New York Times Co. v. Connor,* 365 F.2d 567 (5th Cir. 1966). *See also Margoles v. Johns,* 333 F.Supp. 942, 946 (D.D.C.1971), *aff'd,* 157 U.S.App.D.C. 209, 483 F.2d 1212 (1973).

12. *See Siam Kraft Paper Co. Ltd. v. Parsons & Whittemore, Inc., supra,* at 812.

neither *Mueller Brass* nor any other case recognizing the "government contacts" principle based its denial of jurisdiction upon the fact that the claim arose apart from the activities upon which jurisdiction was premised. Rather, those cases held that the activities themselves, when they consisted solely of contacts with the federal government, did not constitute the transaction of business within the meaning of the statute. Absent activities which can place a nonresident within the scope of the long-arm statute, no personal jurisdiction may be asserted over him.[13]

The dissent acknowledges—as indeed it must—that appellees merely "caused appellant to carry on business activities in the District on their behalf." (*Infra* at 20.) However, for the foregoing reasons, we conclude both that appellant's own activities there cannot constitute a proper basis for asserting jurisdiction over the nonresident appellees, and that appellees' limited presence in the District of Columbia to confer with the EPA fell beyond the permissible reach of the long-arm statute. The trial court properly refused to sustain the exercise of in personam jurisdiction over appellees.

*Affirmed.*

FICKLING, Associate Judge, with whom KELLY and MACK, Associate Judges, join, dissenting:

On July 2, 1973, appellant Environmental Research International, Inc., filed a complaint in the Civil Division of Superior Court for breach of contract and unjust enrichment, naming appellees Lockwood Greene Engineers, Inc.,[1] and Penn Dye & Finishing Co., Inc.,[2] as defendants. The trial court on September 14, 1973, granted appellees' motion to dismiss the action and quash service of process for failure to effect proper in personam jurisdiction. Appellant's sole contention on appeal is that appellees were transacting business in the District of Columbia[3] within the meaning of D.C.Code 1973, § 13–423(a)(1), so as to subject them to the personal jurisdiction of the courts of the District on a claim for relief arising from such activities.[4] I agree and would reverse.

The jurisdictional facts can be summarized as follows: Appellant is a District corporation engaged in providing engineering consulting services with its offices in the District. Appellee Lockwood Greene is also an engineering consulting firm; however, it is a Massachusetts corporation with its principal place of business in Spartanburg, South Carolina. Appellee Penn Dye is a Pennsylvania corporation located in Pine Grove, Pennsylvania, whose sole business is furnishing textile cloth for its parent corporation which is similarly located in Pine Grove. Neither appellee is incorporated or licensed to do business in the District. Except for appellees' contacts with appellant and the Environmental Protection Agency,[5] there is no evidence that either appellee has engaged in any activities in the District in recent years.

---

13. We are dealing here only with the exercise of personal jurisdiction based upon "transacting business" in the District of Columbia. The long-arm statute provides five other bases for jurisdiction over nonresidents, none of which is relevant to this case. D.C.Code 1973, § 13–423(a).

1. Lockwood Greene Engineers, Inc., will hereinafter be referred to as Lockwood Greene.

2. Penn Dye & Finishing Co., Inc., will hereinafter be referred to as Penn Dye.

3. The District of Columbia will hereinafter be referred to as the District.

4. D.C.Code 1973, § 13–423(a)(1) provides:
   (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
   (1) transacting any business in the District of Columbia. . . .

5. The Environmental Protection Agency will hereinafter be referred to as EPA.

In the spring of 1971, Penn Dye apparently was faced with the problem of reducing the water pollution caused by the industrial liquid waste produced by its plant. During this period Penn Dye enlisted the engineering services of Lockwood Greene to aid in solving this problem. In order to abate the water pollution, Penn Dye contemplated the construction of a liquid waste treatment facility and wanted to obtain a construction grant from EPA to help finance the project. Lockwood Greene's function, with respect to the project, would be to set up a pilot waste treatment facility at Penn Dye's plant for the purpose of collecting data which would then be used in an application for the EPA grant. Also during this period, appellant approached Lockwood Greene in Spartanburg, South Carolina, and offered to provide its services in helping to obtain the EPA grant. Several months later, in a letter dated August 30, 1971, Penn Dye authorized appellant and Lockwood Greene to proceed with the construction of the pilot waste treatment facility for the purpose of obtaining the EPA grant. A week and a half later, Lockwood Greene sent appellant a letter outlining appellant's duties concerning the project. Appellant was to act as a liaison with the EPA for Penn Dye and Lockwood Greene. In addition, appellant was to aid in the preparation and processing of the grant application through the EPA.

As a result of the above authorization from Lockwood Greene and Penn Dye, appellant alleges that it performed the following services from its offices in the District of Columbia: Evaluation of data from the pilot facility; discussion of the pilot facility and grant application with personnel from the EPA; aid in preparation of the grant application for submission to EPA; and communication by telephone and mail with Lockwood Greene and Penn Dye concerning these activities. Appellant further alleges that appellees have not paid it $6,784.52 owed for performance of these services.

I begin my analysis of § 13–423(a)(1) of the District's new long-arm statute by examining its legislative history. Although the legislative history is sparse, two short references contained in the House and Senate committee reports are helpful. The Senate Committee on the District of Columbia reported:

A new chapter (4) is added, incorporating a modified version of the first two articles of the Uniform Interstate and International Procedure Act. The uniform provisions codify recent case law with respect to extraterritorial jurisdiction over and service upon persons in civil litigation, and supply the reorganized trial bench of general jurisdiction with a necessary procedural adjunct. Chapter 4 more specifically grants expanded bases of jurisdiction and modes of service identical to or reciprocal with those provided under the laws of the nearby State of Maryland for the courts of that State, and substantially the same as those provided in the adjacent State of Virginia and approximately 10 other states. [S.Rep.No.405, 91st Cong., 1st Sess. 35 (1969).]

Likewise, the House Committee on the District of Columbia reported:

Section 132 on civil jurisdiction and service outside the District of Columbia is modeled on the Uniform Interstate and International Procedure Act, [and] more specifically grants expanded bases of jurisdiction and modes of service identical to or reciprocal with those provided under the laws of the nearby State of Maryland for the courts of that State, and substantially the same as those provided in the adjacent State of Virginia and approximately ten other States. [H.R.Rep.No.907, 91st Cong., 2d Sess. 61 (1970).]

The States of Maryland and Virginia, and the Uniform Interstate and International Procedure Act have, in fact, "transacting any business" sections which are es-

sentially identical to § 13–423(a)(1).[6] It is plain, therefore, that Congress intended to provide the District with a long-arm statute similar to those of Maryland and Virginia. Consequently, when interpreting our long-arm statute, we must look for guidance to the background of the Uniform Act and the long-arm statutes of Maryland and Virginia as interpreted by their courts "with the realization that Congress sought to attain uniformity in the area's three primary jurisdictions." *Margoles v. Johns,* 157 U.S.App.D.C. 209, 213, 483 F.2d 1212, 1216 (1973).

The courts of both Maryland and Virginia have had an opportunity to interpret the "transacting any business" section of their long-arm statutes. The courts of both these jurisdictions have held that this section reflects a legislative intent to provide in personam jurisdiction over nonresidents who engage in some purposeful activity in the state to the extent permissible by the Due Process Clause. *Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 180 S.E.2d 664 (1971); *Groom v. Margulies,* 257 Md. 691, 265 A.2d 249 (1970). The Uniform Act also recognizes this broad interpretation. The Commissioners' Note to the Uniform Act states that "[t]his provision [transacting business section (a)(1)] should be given the same expansive interpretation that was intended by the draftsmen of the Illinois Act and . . . the courts of that state." 9B Uniform Laws Annot. at 310–11 (1966). The legislative intent of the transacting business section of the Illinois long-arm statute is interpreted to allow personal jurisdiction over nonresident defendants to the extent permitted by the Due Process Clause. *Ziegler v. Houghton-Mifflin Co.,* 80 Ill.App.2d 210, 224 N.E.2d 12 (1967); *Koplin v. Thomas, Haab & Botts,* 73 Ill.App.2d 242, 219 N.E. 2d 646 (1966).

Similarly, Congress intended that § 13–423(a)(1) permit in personam jurisdiction over nonresidents to the extent allowed under the Due Process Clause of the Constitution. Thus, two questions arise: (1) whether in the instant case the statute by its language permits the District to subject appellees to personal jurisdiction; and (2) if so, whether personal jurisdiction under the statute would nevertheless contravene the Due Process Clause of the Constitution.

With respect to the first question, § 13–423(a)(1) requires that the claim for relief arise from the person's transacting *any* business in the District of Columbia. Here, the claim clearly arises from appellees' only contact with the District: their service contract with appellant.

Appellees contend, however, that their entrance into the District to deal with a federal agency places them within the well recognized exception of *Mueller Brass Co. v. Alexander Milburn Co.,* 80 U.S.App.D.C. 274, 152 F.2d 142 (1945); therefore, they are not "transacting business" in the District within the meaning of § 13–423(a)(1). This contention is wide of the mark.

The court in *Mueller Brass Co.* was concerned with the question of whether maintenance of an office and representative in the District by a foreign corporation, to serve as a liaison with federal agencies, was a substantial enough contact to justify in personam jurisdiction against the foreign corporation in the District on a claim arising from dealings—entirely distinct— from those activities. Section 13–423(a)(1), however, applies to the wholly different situation where, as in this case, the claim for relief arises from the foreign corporation's activities in the District with a District resident. Further, the court in

---

6. *See* Md.Code Ann. Art. 75 § 96(a)(1) (Cum.Supp.1973); Va.Code Ann. § 8–81.2 (a)(1) (Cum.Supp.1973); Uniform Inter-state and International Procedure Act § 1.03 (a)(1).

*Mueller Brass Co.* was not construing our present long-arm statute, but interpreting a more restrictive provision of the predecessor act which provided:

> In actions against foreign corporations doing business in the District all process may be served on the agent of such corporation or person conducting its business. . . . [D.C.Code 1940, § 13–103.]

Thus, *Mueller Brass Co.* is inapposite to the instant case.

The analysis concerning the constitutional question is more difficult. I begin by discussing several Supreme Court decisions which have established meaningful guidelines as to the limits of due process in a setting such as the one here. *See Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In a landmark decision the Court in *International Shoe Co.* held that in order to subject a foreign corporation to a judgment in personam, the Due Process Clause requires only that the foreign corporation have minimum contacts within the state of such character that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." [7] The Court further stated:

> Whether due process is satisfied must depend . . . upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. . . .

But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. . . . [326 U.S. at 319, 66 S.Ct. at 160, 90 L. Ed. at 104.]

Twelve years later the Court applied the "minimum contacts" test of *International Shoe Co.* to *McGee, supra.* In *McGee,* the defendant, a Texas insurance company, had reinsured the life of a California resident. The policy had been initially issued by an Arizona insurance company whose insurance obligations had been assumed by defendant. The only contact defendant had with California was mailing the reinsurance certificate and premium notices into the state and receiving the signed certificate and premium payments by mail from California. Defendant never maintained either an agent or office in California. And, there was no evidence that it had ever solicited any insurance business in California apart from this one policy. Defendant refused to pay the proceeds of the policy upon the death of the insured; consequently, the beneficiary, also a California resident, brought suit in California. The Court held that there had been sufficient contact to enable California to subject defendant to in personam jurisdiction in that state. The Court said:

> It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. . . . The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he

---

7. 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102.

died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. . . . [355 U.S. at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 226.]

The Court stressed the inconvenience to insureds if they are required to bring suit where the insurer has its home office and, while the Court recognized that there may be some inconvenience to the insurer by subjecting it to suit in California, such inconvenience did not amount to a denial of due process. *Id.*

Later in the same term, the Court in *Hanson, supra,* further defined the "minimum contacts" test as follows: "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298.

It is apparent that these cases do not provide a hard and fast rule for determining what acts by a nonresident defendant will subject it to a court's jurisdiction. *See generally* Annot., 27 A.L.R.3d 397 (1969). What is provided, however, is a guide by which each case is decided on its own particular facts. *Kolbe, Inc., supra.*

In the instant case appellees, through their contract with appellant, caused appellant to carry on business activities in the District on their behalf. In addition, it is reasonable to infer that appellees were aware at the time the contract was made that these activities would be performed in the District. Appellant's office is located in the District and it was hired to help process an application for a construction grant through a federal agency which is also located in the District. Thus, I am of the view that appellees have· purposefully availed themselves of the privilege of transacting business in the District and have thereby invoked the benefits and protection of the District's laws.

The District, moreover, has a manifest interest in providing a forum for its residents when their clients refuse to pay fees owed for services performed in the District. These residents would be at a disadvantage if they had to follow their clients to other jurisdictions in order to bring suit for their fees. Although there may be inconvenience to the clients in being held· to suit here, under the facts of this case I do not think that such inconvenience constitutes a denial of due process.

In conclusion, I would hold that maintaining this action in the District pursuant to § 13–423(a)(1) would not offend "traditional notions of fair play and substantial justice," and thereby contravene the Due Process Clause of the Constitution. *Accord, United States Railway Equipment Co. v. Port Huron & Detroit R. R.,* 495 F.2d 1127 (7th Cir. 1974); *Ward v. Formex, Inc.,* 27 Ill.App.3d 22, 325 N.E.2d 812 (1975); *Colony Press, Inc. v. Fleeman,* 17 Ill.App.3d 14, 308 N.E.2d 78 (1974); *Cook Associates, Inc. v. Colonial Broach & Machine Co.,* 14 Ill.App.3d 965, 304 N.E.2d 27 (1973); *Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Co.,* 283 So.2d 687 (La.1973); *Zerbel v. H. L. Federman & Co.,* 48 Wis.2d 54, 179 N.W.2d 872 (1970).