**AFIRM, INC., a Corporation, Plaintiff,**

**v.**

**FRAZEE PAINT & WALLCOVERING COMPANY, INC., Defendant.**

No. 85 C 8730.

United States District Court,
N.D. Illinois, E.D.

Dec. 24, 1985.

R.S. Maione, Drugas, Maione, Morgan & Hyink, Chicago, Ill., for plaintiff.

Jeffrey S. Goldman, William Henry Barrett, Fox & Grove, Chtd., Chicago, Ill., for defendant.

MEMORANDUM OPINION
AND ORDER

ASPEN, District Judge:

Plaintiff Afirm, Inc. ("Afirm") brought this diversity suit against defendant Frazee Paint and Wallcovering Company, Inc. ("Frazee") for breach of an oral contract. Afirm is an Illinois corporation with its principal place of business in Hinsdale, Illinois. Frazee is a California corporation with its principal place of business in San Diego, California. Frazee contends that the court lacks personal jurisdiction over Frazee and has moved to dismiss the suit under 12(b)(2). For the reasons set forth below, the court grants Frazee's motions.

---

**3.** For purposes of this motion, the Court assumes that Section 3013 did originate in the Senate.

*Facts*

The parties have submitted conflicting affidavits concerning the material facts.[1] While Afirm carries the burden of producing evidence sufficient to support jurisdiction, *see, e.g., Caicos Petroleum Service Corp. v. Hunsaker*, 551 F.Supp. 152, 153 (N.D.Ill.1982), it enjoys the concurrent advantage of having factual conflicts resolved in its favor. *See Jacobs/Kahan v. Marsh*, 740 F.2d 587, 589 (7th Cir.1984); *Deluxe Ice Cream v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir.1984). Thus, the factual statement that follows is derived from Afirm's affidavit and complaint and from Frazee's affidavits to the extent they are not in conflict with Afirm's statements.

Frazee is registered to do business in California—not Illinois. Frazee does not maintain or operate any facility in any Illinois county. Nor does Frazee own, use or possess any real property in Illinois. In the past twelve months, Frazee has not made any shipment or sale of any kind whatsoever to any entity, buyer or recipient in Illinois. However, Frazee has had unsolicited business contact and interstate telephone conversations with Afirm in the last two years.

Afirm is an employment agency. Its job is to help businesses find qualified employees and vice versa. If it is successful, the hiring corporation pays it a fee, usually a percentage of the salary of the person hired. In the last two years on several occasions, Afirm made unsolicited interstate calls to Frazee to present applicants for various positions. Frazee never called Afirm, unless Frazee was returning a call. Nor did Frazee ever meet with Afirm or interview applicants in Illinois. However, Afirm alleges that the parties agreed over the phone that if Frazee hired an employee Afirm referred to it, it would pay Afirm 25% of the employee's first annual salary.

On June 9, 1983, candidate Martin Balow was presented by Afirm to Frazee for a "technical director" position. Per Frazee's request, Balow's resume was submitted. In addition, an appointment by telephone was arranged for Balow to be interviewed by Frazee in California in September 1983. But Frazee did not hire Balow then. Instead, Frazee hired Cyriac Alexander, another potential candidate, for the technical director position. Balow then accepted a technical director position with another company.

In May of 1984, Frazee placed an ad for a senior chemist in a trade publication circulated in Illinois. Afirm responded to this ad by placing another unsolicited call to Frazee. Afirm spoke to Cyriac Alexander, now the Senior Vice President of Operations,[2] and presented not Balow but a former applicant, Ray Guchurra. Mr. Alexander never followed up on Afirm's presentation or returned Afirm's calls.

The parties did not communicate with each other again until October 15, 1984, the day Afirm found out that Frazee ended up hiring Balow in July 1984 for the technical director position.[3] Afirm contacted Alexander and demanded a placement fee of 25% of Balow's first year's salary ($12,-500). Frazee refused to pay such fee. Afirm filed this lawsuit.

Afirm contends that Frazee transacted business in Illinois, thereby rendering Frazee amenable to in personam jurisdiction within Illinois pursuant to the Illinois Long Arm Statute. Ill.Rev.Stat. ch. 110, § 2–209(a)(1) (1983). In addition, Afirm argues that Frazee has been "doing business" in

---

1. Afirm's motion to strike the affidavit of Cyriac Alexander is denied. We will consider it for what it is worth.

2. Frazee's uncontradicted affidavits establish that the technical director position which Balow had applied for had been upgraded before Alexander was hired to fill it. Alexander assumed some hiring duties in this position. *See* n. 7 below.

3. There is a dispute between the parties regarding the position Balow filled. Frazee claims that Balow was hired for a completely different job from the first one. In addition, Frazee has alleged facts indicating that Balow was hired as a result of Mr. Alexander's contacts and efforts—not Afirm's prior efforts. We discuss this in greater detail below.

Illinois for the last two years, thereby subjecting Frazee to personal jurisdiction under the doctrine bearing that name. We hold below that personal jurisdiction is lacking under either theory.

### Discussion

In a suit based on diversity of citizenship, a federal court has personal jurisdiction only if the forum state court would have jurisdiction. *See, Maurice Sternberg v. James,* 577 F.Supp. 882, 884 (N.D.Ill. 1984). Therefore, the first step in the analysis is to determine as a statutory matter whether the Illinois long-arm statute reaches the defendant. *Id.* If so, the court must decide whether the Due Process Clause permits service of process. *See, e.g., Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d at 1214.[4] Because we find below that the long-arm statute does not reach the defendant, we will not need to address the constitutional issue.

The only pertinent provisions of the Illinois long-arm statute state:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated thereby submits such person and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing business of any such acts:

(1) The transaction of any business within this State;

*     *     *     *     *     *

(c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section.

Ill.Rev.Stat. ch. 110, § 2–209(a)(1) (1983). Sections 2–209(a)(1) and 2–209(c) essentially create two factors for the court to consider. The first subsection requires us to examine the nature and extent of Frazee's contacts with Illinois. The second requires that there be some overlap between those contacts and the cause of action alleged in the complaint. In particular, the second subsection requires that the relevant transaction of business "give rise to the plaintiffs' cause of action; in other words, the plaintiff's claim must 'lie in the wake of the commercial activities by which [the] defendant submitted to the jurisdiction of Illinois courts.'" *Snyder v. Smith,* 736 F.2d 409, 416 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984), *quoting, Loggans v. Jewish Community Center,* 113 Ill.App.3d 549, 557, 69 Ill.Dec. 484, 490, 447 N.E.2d 919, 925 (1983); *see also Jacobs/Kahan & Co. v. Marsh,* 740 F.2d at 591.

The second test enables us to cull out at the outset many of the makeweight facts that Afirm asserts in support of jurisdiction. It alleges making phone calls and employee references for prospective employees other than Balow, the one Frazee hired. While these other contacts are relevant to Afirm's "doing business" claim, which we discuss below at 11–12, they did not in any way "give rise to" Afirm's cause of action in this case. Afirm does not and cannot contend otherwise. Thus, they are irrelevant to our analysis under the long-arm statute.

Stripped of its irrelevancies, then, Afirm's case is based on the following disputed facts which we have construed in its favor:

(1) It called Frazee and sent Balow's resume;

(2) Frazee agreed over the phone that if it hired Balow for the technical di-

---

**4.** Until 1981, the Illinois Supreme Court had fused interpretation of the long-arm statute with construction of the Due Process Clause. *See Nelson v. Miller,* 11 Ill.2d 378, 143 N.E.2d 673 (1957). However, in *Green v. Advance Ross Electronics Corp.,* 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981), the Supreme Court held that the meaning of § 2–209 should be fixed and therefore separate from changing concepts of due process. *Accord, Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981). Thus, it will generally be necessary to bifurcate the analysis and decide whether the long-arm statute is satisfied before reaching the constitutional issue.

rector position, it would pay Afirm a fee.

(3) Balow was interviewed and rejected. Alexander was hired instead, for a reconstituted position. Balow went to work elsewhere.

(4) Some months later, Frazee hired Balow, but refused to pay Afirm a fee.

The parties dispute whether Balow filled the same position he was initially interviewed for. Afirm asserts simply that he was, though we wonder how it is competent to allege that fact. In contrast, Frazee's affidavits describe in detail how Balow's position is much different from the one he originally sought. Indeed, they say that that position was changed in order to woo Alexander, well before Balow applied the second time. Even though Frazee's version strikes us as more credible, we must resolve this conflict in Afirm's favor. Even doing so, we think jurisdiction over Frazee is lacking.

First, we have strong doubts whether Frazee's contacts with Illinois were sufficient to amount to "the transaction of business within" Illinois. At best, we have an unsolicited phone call from an Illinois plaintiff, in which an agreement was reached that called for payment to the Illinois plaintiff for some minimal services rendered within Illinois. Recent cases have held that mere telephone calls alone cannot establish jurisdiction over a foreign defendant. *See, e.g., Connolly v. Samuelson*, 613 F.Supp. 109, 111 (N.D.Ill.1985) (Aspen, J.); *Maurice Sternberg, Inc. v. James*, 577 F.Supp. 882, 885 (N.D.Ill.1984) (Grady, J.) (interstate phone calls and mailings cannot themselves satisfy long-arm statute); *U.S. Reduction Co. v. Amalgamet*, 545 F.Supp. 401, 403 (N.D.Ill.1982) (Aspen, J.) (telephone call not enough where all performance was to be done outside of Illinois); *Caicos Petroleum*, 551 F.Supp. at 154–55 (Moran, J.) (and cases cited therein). In other recent cases upholding the exercise of jurisdiction, contacts with Illinois were clearly more substantial than those in this case; most of these cases involved at least a visit by defendant into Illinois, or ship-ment of product here, neither of which is present in this case. *See Jacobs/Kahan*, 740 F.2d at 590–91 (defendants partially negotiated and executed contract in Illinois); *Snyder*, 736 F.2d at 416 (contract negotiated in Illinois); *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1214–16 (7th Cir.1983) (discussion in Illinois instrumental to ultimate signing of contract); *Met-L-Wood Corp. v. SWS Industries, Inc.*, 594 F.Supp. 706, 708–09 (N.D.Ill. 1984) (Shadur, J.) (three visits to Illinois, one of which was prelude to contract); *Welles Products Corp. v. Plad Equipment Co., Ltd.*, 563 F.Supp. 446, 447–49 (N.D.Ill. 1983) (Roszkowski, J.) (defendant initiated phone calls and later visited Illinois to oversee some of performance in Illinois); *Ronco, Inc. v. Plastics, Inc.*, 539 F.Supp. 391, 395–97 (N.D.Ill.1982) (Marshall, J.) (defendant visited Illinois to negotiate and make changes in contract and also sent substantial volume of product to Illinois). This case falls between the first and second cluster of cases cited above. Defendant's only contact with Illinois was via the phone; however, the alleged contract does call for Afirm, the plaintiff, to perform within Illinois. There are cases which uphold exercise of jurisdiction over a non-resident defendant where a plaintiff was to perform in Illinois. *See Ward v. Formeso*, 27 Ill.App.3d 22, 325 N.E.2d 812 (2d Dist. 1975); *Colony Press, Inc. v. Fleeman*, 17 Ill.App.3d 14, 308 N.E.2d 78 (1st Dist.1974); *Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill.App.3d 965, 304 N.E.2d 27 (1st Dist.1973). However, more recent cases say that the plaintiff's place of performance is irrelevant for jurisdictional purposes; the focus should be on the acts of the defendant. *Maurice Sternberg*, 577 F.Supp. at 885; *City of East Moline v. Bracker, Hayes & Miller*, 133 Ill.App.3d 136, 140, 88 Ill.Dec. 322, 325–26, 478 N.E.2d 637, 640–41 (3d Dist.1985). It is clear that the law in this area is somewhat in disarray.

Afirm relies heavily on the *Cook v. Colonial* case cited above. *Cook v. Colonial* also involved a "headhunter" plaintiff. The defendant company called the plaintiff

asking it to refer prospective employees. Plaintiff did so, and defendant ultimately hired the employee. Although the company's only contact with the Illinois plaintiff was via the one phone call it made, the Court held that it had transacted business within Illinois. 14 Ill.App.3d at 969, 304 N.E.2d at 31. It apparently relied on the fact that the defendant there initiated the transaction, and that the contract called for plaintiffs' performance within Illinois and the payment of a fee to Illinois. *Id.*

*Cook v. Colonial* is arguably distinguishable because the defendant there initiated the transaction, while the plaintiff here did so. While some courts make much of who called whom first, *see Ciacos Petroleum,* 551 F.Supp. at 155 (citing cases), we do not see why this fact alone deserves much importance. *Cf. Maurice Sternberg,* 577 F.Supp. at 885 (phone calls insufficient regardless of who phones first). In any event, we have previously expressed doubt about the current viability of *Cook v. Colonial. See U.S. Reduction,* 545 F.Supp. at 403. Like some of the other cases cited above, *Cook* was decided under the regime of *Nelson v. Miler,* which fastened interpretation of the long-arm statute to construction of the Due Process Clause. However, in 1981, the Illinois Supreme Court cast the long-arm statute adrift from the Due Process Clause. *See* n. 4 above. Thus, interpretation of the long-arm statute might be stricter since *Green* than it was in 1973 when *Cook v. Colonial* was decided. Indeed, cases like *Maurice Sternberg* and *City of East Moline* implicitly hold that *Cook v. Colonial* is dead when they state that mere phone calls are *per se* insufficient to constitute the transaction of business within Illinois even where plaintiffs are to perform in Illinois. And the

recent *City of East Moline* case casts doubt in general on the precedential value of decisions interpreting the long-arm statute under the *Nelson v. Miller* regime.[5] *See* 133 Ill.App.3d at 139, 478 N.E.2d at 639–40; *also Petty v. Cadwallader,* 135 Ill.App.3d 695, 696–97, 90 Ill.Dec. 518, 520, 482 N.E.2d 225, 227 (4th Dist.1985).

We need not examine *Cook v. Colonial* any further for signs of life. For whether or not *Cook v. Colonial* lives, we think that a case involving the same employment agency, and decided by the Illinois Supreme Court, *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 57 Ill. Dec. 730, 429 N.E.2d 847 (1981), controls this case. Regardless of whether the phone call here constituted the "transaction of business within Illinois" under *Cook v. Colonial,* the hiring of Balow does not "lie in the wake" of that one phone call, under *Cook v. Lexington.*[6]

In that case one of Cook's managers referred a prospective employee to defendant Lexington, a Missouri corporation. Lexington had initiated the transaction by calling Cook for an employee. Lexington interviewed the applicant in Chicago, but that applicant rejected the job because the salary was too low. Communication between the two stopped for several months. Lexington then contacted Cook's manager, who at the time was in business in Massachusetts for herself. Lexington was seeking an employee for a similar position, but at a higher salary. The manager submitted the name of the previous applicant, among others. Lexington eventually hired the applicant and paid Cook's former manager a fee. Cook found out about this, also demanded a fee, and then sued when Lexington refused to pay. After first reaffirming *Green's* decision to sever § 2–209

**5.** Of course, these cases would still have value as precedent for interpreting the Due Process Clause. It should be noted that not everyone agrees that the long-arm statute is now narrower than the Due Process Clause. In *Ronco, supra,* Judge Marshall states that the *Green* case perhaps only severed the two lines of analysis *without* narrowing the scope of the statute. In other words, it might be that the Supreme Court merely held that the meaning of the statute should remain fixed, not be narrowed; thus, if the contours of the Due Process Clause have not changed since 1981, the long-arm statute would still coincide with that clause for jurisdictional purposes. *See* 539 F.Supp. at 398.

**6.** There is no question that in the earlier case, *Cook v. Colonial,* the cause of action "lay in the wake" of the transaction in issue.

from the Due Process Clause, the Supreme Court of Illinois held, among other things, that the initial reference and interview did not lead to the applicant's hiring, and therefore the cause of action did not arise from the Illinois contact. Because the applicant had rejected the first position and was hired for a different one, and the record did not show that the initial interview had any influence on the ultimate hiring, the Court held that the ultimate hiring was too remote from the initial reference to conclude that the cause of action arose from that initial business transaction.

The same conclusion follows for this case. Like the *Cook v. Lexington* case, here the initial reference resulted in no job for the applicant. Frazee rejected Balow and hired Alexander. Balow went to work elsewhere and several months passed. Even though Balow was eventually hired, like the situation in *Cook v. Lexington* the record here does not suggest that the initial reference was at all related to the ultimate hiring of Balow. In fact, the uncontradicted evidence in the record reveals that the hiring was completely *unrelated* to the reference.[7] Under these facts, the ultimate hiring was far too remote from, if connected at all to, the asserted Illinois contact (which was tenuous itself) to fairly conclude that the cause of action "lies in the wake" of that transaction. We therefore hold that Afirm has failed to satisfy the long-arm statute.

It is easy to conclude next that Afirm fails to satisfy the alternative "doing business" test as well. A remnant of the times preceding the modern "minimum contacts" era, the "doing business" doctrine examines a defendant's contacts with a forum state to determine whether he or she is fictionally "present" for jurisdictional purposes. *See generally Maunder v. DeHavilland Aircraft of Canada, Ltd.,* 102

Ill.2d 342, 349–52, 80 Ill.Dec. 765, 768–71, 466 N.E.2d 217, 220–23 (1984), *cert. denied,* — U.S. ——, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984); *Cook Associates v. Lexington,* 87 Ill.2d at 199–204, 57 Ill.Dec. at 734–36, 429 N.E.2d at 851–53. If a defendant *is* "doing business" in Illinois, he or she is amenable to jurisdiction even for causes of action not arising from the transaction of business in Illinois. *See, e.g., Cook v. Lexington,* 87 Ill.2d at 200, 57 Ill.Dec. at 735, 429 N.E.2d at 852. Although the Illinois Supreme Court has fashioned no precise standard for "doing business," it has elaborated a general test. A defendant's business contacts with Illinois must be "continuous and systematic." *Maunder,* 102 Ill.2d at 349, 80 Ill.Dec. at 769, 466 N.E.2d at 221. Put another way, doing business means acting within Illinois " 'not occasionally or casually, but with a fair measure of permanence and continuity.' " *Id.* at 351, 80 Ill.Dec. at 769, 466 N.E.2d at 221, *quoting, Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (Cardozo, J.). Frazee's activities plainly fall far short of this measure of "doing business." Taking Afirm's affidavit as true, Afirm tried to refer several applicants to Frazee, and Frazee agreed generally to pay Afirm a fee if it hired one of these employees. But Frazee has no office or employee in Illinois, sells no product here and has no other contact with the state. At most, its contacts are sporadic and few, not continuous and systematic. It is not in any sense regularly doing business *in* Illinois; it at most has done a little business *with* one Illinois employment agency. The defendant's Illinois activities were more extensive in *Cook v. Lexington* than here, and the Illinois Supreme Court rejected plaintiff's "doing business" claim in that case. 87 Ill.2d at 203, 57 Ill.Dec. at

---

**7.** Frazee's affidavits detail the following facts, which Afirm has not contested. Thus, we take them as true. *See Caicos Petroleum,* 551 F.Supp. at 153. After Frazee rejected Balow in 1983 and hired Alexander instead, Alexander took responsibility for, among other things, future hiring for the position relevant to this case. The people who hired Alexander had nothing to do with the later hiring. Afirm never referred Balow to Alexander. Alexander placed an ad in trade journals for the position. A third party recommended Balow to Alexander. This was the first time Alexander had ever heard of Balow. Alexander interviewed Balow and made an offer to him, and only later found out about Balow's previous application.

736, 429 N.E.2d at 853. We do the same here.

### D. *Conclusion*

For the foregoing reasons, we hold that Afirm has not satisfied the requirements of the long-arm statute or the doing business doctrine. Thus, we grant Frazee's motion to dismiss for lack of personal jurisdiction. It is so ordered.