Oscar L. THOMAS, Plaintiff,

v.

Anthony J. PRINCIPI, et al. Defendants.

No. CIV.A. 02–1743(ESH).

United States District Court, District of Columbia.

May 28, 2003.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff Oscar Thomas, a retired army veteran, has brought this *pro se* action against the Department of Veterans' Affairs ("DVA"), in which he contends that DVA diagnosed him with a form of schizophrenia, but negligently failed to inform him of that diagnosis or offer him any treatment for his ailment. Plaintiff has asserted claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., as well as for alleged constitutional violations under 42 U.S.C. §§ 1983 and 1985. Defendants (the DVA itself as well as a number of its officers and employees) have now moved to dismiss under FED. R. CIV. P. 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment. They argue primarily the Court lacks subject matter jurisdiction because, in essence, this is an action for suit for veterans' benefits of the sort that Congress has reserved to DVA's exclusive and unreviewable domain. The Court agrees, and will therefore grant the motion to dismiss.

## BACKGROUND

After being honorably discharged from the U.S. Army in August 1989, plaintiff filed a claim for a number of service-related mental and physical disability benefits, including one for "anxiety neurosis." In connection with this claim, he was ordered to submit to a medical treatment examination in the spring of 1991. On August 2, 1991, DVA issued its first rating decision (VA Form 21–6796b) regarding plaintiff's claim. With respect to plaintiff's complaints about anxiety, the Department's internal report noted that "[e]xcept for auditory hallucinations, he does not seem to have any particular sign of schizophrenia, no paranoid tenancies." (Def.'s Mot. to Dismiss, tab H.) However, the report continued, "the examining psychiatrist thinks that the most likely diagnosis is schizophrenia. Some of the adjunct symptoms of schizophrenia were not present, but this will be the working diagnosis for him. A definite diagnosis was not made on the VA examination." (*Id.*) [1] On this basis, the rating specialist who prepared this document denied a service connection for anxiety neurosis, observing that "the last psychiatric examination in service made no diagnosis regarding the veteran's mental status," and that on "the VA exam,

---

1. This statement was apparently based on the diagnosis reached by a Dr. Kelly, who examined plaintiff on March 5, 1991. In his report, Dr. Kelly wrote that plaintiff "has persistent auditory hallucinosis which is troubling, so a diagnosis of schizophrenia probably is the most likely correct diagnosis.

Some of the other adjunct symptoms of schizophrenia are not present, however, but this will be the working diagnosis for him. He has slight social and industrial disability resulting from this." (Defs.' Mot. to Dismiss, tab BB, ex. M.)

a final diagnosis was not made." (Def.'s Mot. to Dismiss, tab H.)

On August 19, 1991, G.J. White, a DVA adjudication officer, set out this conclusion in a letter to plaintiff. White wrote that the claim for service connection with respect to anxiety neurosis had been denied, using the same language that appears in the rating decision. (Def.'s Mot. to Dismiss, tab J ("Service connection is denied for anxiety neurosis because the last psychiatric examination in service made no diagnosis regarding your mental state. On the VA examination, a final diagnosis was not made.").) While this notification letter was sent to plaintiff, it appears that neither the rating decision itself (the VA Form 21–6796b) nor Dr. Kelly's report was included as an attachment. (Defs.' Mot. to Dismiss at 4.) Accordingly, plaintiff apparently did not receive any documents indicating that DVA had made a "working diagnosis" of schizophrenia, although he was told that his request for benefits with respect to his mental condition had been rejected. At any rate, it seems that plaintiff did not file a formal notice of disagreement contesting the Department's denial of his claim for service-connection for his anxiety neurosis.

On November 26, 1996, however, in response to an objection lodged by plaintiff, DVA issued another rating decision, which addressed whether plaintiff had presented new and material evidence to reopen his claim for anxiety neurosis and nervous tension. This decision, which was transmitted to plaintiff on December 23, 1996, found that such evidence had not been offered, and therefore did not reopen the claim. (Defs.' Mot. to Dismiss, tab R.) DVA reached a similar result in March 1998, once again refusing to reopen plaintiff's claim for anxiety neurosis. (Defs.' Mot. to Dismiss, tab Y.) Plaintiff filed a notice of disagreement ("NOD") with this decision on September 20, 1998 (Defs.' Mot. to Dismiss, tab Z), to which DVA responded with a "Statement of the Case" on September 29 of that year. In its Statement, DVA recounted plaintiff's medical history, highlighting the statements in the August 2, 1991 report that "[n]o signs of schizophrenia were noted during examination except auditory hallucinations," but that a diagnosis "of schizophrenia was shown as most likely the correct diagnosis with slight social and industrial disability." (Defs.' Mot. to Dismiss, tab AA.) This seems to have been the first time that plaintiff learned that DVA had made any assessment regarding his schizophrenia during his 1991 examinations.

On November 10, 1999, plaintiff filed an appeal with the Board of Veterans' Appeal ("BVA"), in which he alleged that during the previous decade (since 1991, that is), DVA had wrongfully withheld from him the fact that he had been diagnosed with schizophrenia. Moreover, he alleged that this failure to inform him had caused him significant harm: "The diagnosis of schizophrenia with slight social and industrial disability would have, and in fact, did have a very severe impact on the veteran/appellant's ability to secure and follow a substantially gainful occupation." (Defs.' Mot. to Dismiss, tab K.) Plaintiff's internal appeal is still pending.

Plaintiff also filed an administrative tort claim against DVA on October 11, 2001, based on this same allegation.[2] (Defs.' Mot. to Dismiss, tabs A, BB.) This step is

---

**2.** Plaintiff described his claim in a letter written to DVA on February 11, 2002: "The injuries and damages I have alleged in my claims and elsewhere did not necessarily grow out of any alleged improper medical treatment per se, but rather a lack of notice thereof; the failure on the part of DVA and its employees to provide me with notice and treat me for a very known serious medical condition DVA diagnosed me with on or about 3/5/91 and/or

required by the FTCA, which mandates that no tort claim may be brought against the United States for money damages "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a). While there is no indication that plaintiff's administrative claim has been resolved, the FTCA provides that an agency's failure to "make a final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim." *Id.* Accordingly, on August 30, 2002, plaintiff filed a complaint in this Court, in which he has mounted a number of claims against a variety of defendants associated with DVA. In essence, however, his contention here is the same as has been advanced in his administrative tort action: that DVA should be held liable under the FTCA for negligence and medical malpractice based on the DVA's failure to disclose to plaintiff in October 1991 that he had been diagnosed with some kind of schizophrenia.[3] (Compl.¶¶ 38, 84.) Defendants have now filed a motion under FED. R. CIV. P. 12(b)(1) and 12(b)(6), asking the Court to dismiss this case for lack of subject-matter jurisdiction and for failure to state a claim.

## ANALYSIS

■ The central issue raised by defendants' motion is whether plaintiff's tort claims are barred by 38 U.S.C. § 511. That provision reserves to the Secretary of Veterans Affairs (*i.e.*, DVA) the exclusive authority "to decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or their dependents or survivors of veterans." Moreover, all such decisions "shall be final and conclusive, and may not be reviewed by any other official or by any court." 38 U.S.C. § 511.[4] This statute thus "precludes judicial review in Article III courts of [DVA] decisions affecting the provision of veterans' benefits," a term that includes medical services provided to veterans for disabilities incurred or aggravated in the line of duty. *Price v. United States*, 228 F.3d 420, 421 (D.C.Cir.2000); *cf.* 38 C.F.R. § 20.3(e) ("Benefit means any payment, *service*, commodity, function, or status, entitlement to which is determined under laws administered by the Department of Veterans Affairs pertaining to veterans and their dependents and survivors.") (emphasis added). In construing this provision, "courts have consistently held that a federal district court may not entertain constitutional or statutory claims whose resolution would require the court to intrude upon the VA's exclusive jurisdiction" over the allocation of veterans' benefits. *Price*, 228 F.3d at 422 (upholding dismissal of veteran's FTCA claims based

April 16, 1991; and the omission and concealment of this information for more than 10 years, and to include other acts." (Defs.' Mot. to Dismiss, tab BB.)

**3.** Plaintiff has also asserted a claim under the Privacy Act, in which he contends that defendants failed to keep complete and accurate records about him in connection with his various claims for service-related benefits. (Compl. ¶ 111, Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss at 5.) He has also advanced constitutional claims under 42 U.S.C.

§§ 1983, 1985 (Compl.¶¶ 15, 24), as well as additional tort claims of defamation (*id.* at ¶ 32) and fraud (*id.* at ¶¶ 68, 70, 80). For reasons set out below, these claims fail.

**4.** Instead, such determinations can be reviewed only by the Board of Veterans Appeals, and from there, by the Court of Veterans Appeals and the United States Court of Appeals for the Federal Circuit. *See Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir.1997); *Larrabee v. Derwinski*, 968 F.2d 1497 (2d Cir. 1992) (reviewing history of § 511).

on DVA's alleged bad faith failure to reimburse him for medical expenses incurred at a non-DVA hospital).

Here, the gravamen of plaintiff's claim is that, having made its "working" diagnosis of schizophrenia, DVA "failed to treat or refer Plaintiff as a patient for medical treatment for Schizophrenia, PTSD, a Psyco-vegetative Syndrome and other medical conditions, causing increase in Plaintiff's psychiatric condition and other physical symptoms." (Compl.¶ 104.) In other words, plaintiff contends that the Department failed to provide the level of care medically appropriate for the condition with which it had allegedly diagnosed him. As such, adjudicating these claims would require the Court to second-guess medical judgments made by DVA, including its decisions about how to treat the psychological problems that its physicians may have identified. Specifically, the Court would have to determine whether defendants acted properly in not referring plaintiff for further treatment after his 1991 psychological evaluation, a determination that would necessarily involve a reevaluation of DVA's factual and legal conclusion that plaintiff was not eligible for veterans' benefits (i.e., hospital and medical care for his alleged schizophrenia).

Thus, although he attempts to disguise the fact, plaintiff's FTCA claims amount to a request that this Court review the adequacy of the medical attention provided to plaintiff. A favorable decision as to plaintiff's claims would entail a finding that defendants should have provided a particular quantum of medical treatment to plaintiff that they did not in fact provide. But such a finding is flatly forbidden by § 511. See Derwinski, 968 F.2d at 1500 (federal courts may not hear claims by veterans "seeking a particular type or level of medical care"); In re Agent Orange Product Liability Litigation, 818 F.2d 194, 201 n. 2

(2d Cir.1987) (claims alleging the failure of DVA to "provide adequate medical treatment . . . seek precisely the type of judicial review" forbidden by Congress); cf. Price, 228 F.3d at 422 ("Because a determination whether the VA acted in bad faith or with negligence would require the district court to determine first whether the VA acted properly in handling Price's request for reimbursement, judicial review is foreclosed by 38 U.S.C. § 511(a)."). It thus follows that the Court lacks subject-matter jurisdiction over plaintiff's negligence, emotional distress, and medical malpractice claims.

For similar reasons, the Court lacks jurisdiction to hear the remainder of plaintiff's claims as well. Invoking the Privacy Act, plaintiff alleges that DVA failed to maintain accurate and complete records concerning his medical condition, records necessary to the Department's "determination(s) relating to the qualifications, characters, rights, opportunities of, or benefits to the Plaintiff that was made on the basis of such record." (Compl.¶ 111.) This claim is barred by § 511 because the injuries that allegedly resulted from defendants' failure to maintain his records all ultimately concern the adverse benefits determination made by the Department. In order to rule on the Privacy Act claim, therefore, the Court would also have to pass judgment on whether the underlying benefits decision was correct. As such, the resolution of this claim "would require the district court to determine not only that the VA intentionally failed to maintain complete records, but also whether, but for the missing records, Rosen should have been awarded disability benefits. This would involve a review of the prior adverse VA decision to determine whether the absent evidence affected the result and, if the court so concludes, it must then act as the Veterans

Administration itself, applying benefits rules to the facts in order to determine the correct award of disability had the files been adequately maintained." *Quarles v. United States,* 731 F.Supp. 428, 431 (D.Kan.1990); *see also Rosen v. Walters,* 719 F.2d 1422 (9th Cir.1983) (no jurisdiction to entertain veteran's Privacy Act claim that the Veterans Administration deliberately destroyed records pertinent to his bid for disability benefits); *Castle v. United States,* 2001 WL 1602689, at *7 (N.D.Cal. Dec. 10, 2001); *Menendez v. United States,* 67 F.Supp.2d 42, 46 (D.P.R. 1999).

■ Plaintiff's constitutional claims are also precluded by § 511, for they too are at bottom challenges to DVA's decision not to provide veterans' benefits at the level that plaintiff desired. For instance, plaintiff contends that defendants violated the due process and equal protection clauses by depriving him "of the proper mental, physical, emotional, health satisfaction and enjoyment of being granted and receiving needed and necessary vested veterans benefits, e.g., (medical treatment) as other similarly situated disabled veterans." (Compl.¶ 20.) This is little more than an attack on the specific actions taken by DVA in connection with plaintiff's application for benefits, the resolution of which would once again require the Court to pass judgment on the decisions of the Department in evaluating that application. Accordingly, the fact that these claims have been clothed in constitutional garb does not protect them from the preclusive reach of § 511. *See Cheves v. Dep't of Veterans Affairs,* 227 F.Supp.2d 1237, 1246 (M.D.Fla.2002) (holding that § 511 interposes a bar to as-applied constitutional challenges to DVA's processing of a claim for veterans' benefits); *Verner v. United States,* 804 F.Supp. 381, 384–85 (D.D.C. 1992).

Finally, while plaintiff's claims for defamation and fraud may not be barred by § 511, they are barred on sovereign immunity grounds, as the FTCA, which contains the only waiver of sovereign immunity applicable here, specifically excludes such claims from the category of those that may be asserted against the federal government. *See* 28 U.S.C. § 2680(h) (providing that the FTCA does not apply to claims "arising out of … libel, slander, misrepresentation, [and] deceit"); *accord In re Orthopedic Bone Screw Litigation,* 264 F.3d 344, 363 (3rd Cir.2001) (holding that common law intentional fraud claim cannot be maintained under the FTCA). These claims too must therefore be dismissed.[5]

5. Plaintiff has also filed a Motion for Leave to File an Amended Complaint. With this motion, he seeks to add three more claims: (1) a Privacy Act claim against the Assistant United States Attorney handling this case for disclosing plaintiff's medical records as part of defendants' motion to dismiss; (2) a claim for failure to diagnose, inform, warn, or treat against DVA based on its handling of plaintiff's medical care from 1991 forward; (3) a claim for legal malpractice against the Disabled American Veterans and the Non–Commissioned Officers Association (plaintiff's onetime legal representatives) for failing to provide him with documents alluding to his alleged 1991 schizophrenia diagnosis.

As to the first claim, given the identity of the proposed defendant, the Court believes that allowing such an amendment in the context of the pending action would unduly prejudice the government. *See Childers v. Mineta,* 205 F.R.D. 29, 31 (D.D.C.2001) ("The court may also deny leave to amend the complaint if amending would cause the opposing party undue prejudice."). Plaintiff's second proposed claim essentially repeats the malpractice claims the Court has determined in this Memorandum Opinion are barred by § 511. As such, providing leave to amend would be futile because this new claim could not survive a motion to dismiss. *See Robinson v. Detroit News, Inc.,* 211 F.Supp.2d 101, 114 (D.D.C.2002). Finally, the third claim is

## CONCLUSION

For the reasons given above, defendants' motion to dismiss for lack of subject matter jurisdiction is granted, and this case shall be dismissed with prejudice.

### *ORDER*

For the reasons provided in the attached Memorandum Opinion, it is hereby

**ORDERED** that defendants' Motion to Dismiss is **GRANTED**; it is

**FURTHER ORDERED** that Counts I, II, III, V, X, XI, and XII are **DISMISSED** for lack of subject-matter jurisdiction; it is

**FURTHER ORDERED** that Counts IV, VI, VII, VIII, IX, and XIII are DISMISSED for failure to state a claim on which relief can be granted; it is

**FURTHER ORDERED** that plaintiff's Motion for Leave to File an Amended Complaint is **DENIED**; and it is

**FURTHER ORDERED** that all other outstanding motions are **DENIED AS MOOT.**

**This is a final appealable order.**

largely unrelated to plaintiff's original cause of action, and would significantly alter the theory of the case from one about medical decisions by DVA to one about legal decisions made by the advocacy groups which represented plaintiff while his benefits claims was pending. *See Mississippi Ass'n of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 543–44 (D.D.C.1991) (denying motion for leave to amend where amendment "would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action"). For these reasons, plaintiff's motion will be denied, although he remains free to assert the first and third claims in a new action against the appropriate defendants.