Oscar L. THOMAS, Appellant,

v.

DISABLED AMERICAN VETERANS ASSOCIATION, et al., Appellees.

Nos. 05–CV–1318, 05–CV–1319.

District of Columbia Court of Appeals.

Submitted June 20, 2006.

Decided Aug. 23, 2007.

---

Oscar L. Thomas, filed a brief, pro se.

Christopher Clay, Sacramento, CA, Ralph A. Finizio, Pittsburgh, PA, and Fidelis Agbapuruonwu, Washington, DC, filed a brief, for the Disabled American Veterans Association.

Richard H. Ihfe, San Antonio, TX, and William E. Leighner, filed a brief for appellee, Non–Commissioned Officers Association of the United States of America.

Before GLICKMAN, KRAMER, and FISHER, Associate Judges.

FISHER, Associate Judge:

Oscar L. Thomas filed a civil complaint in the Superior Court against the Disabled American Veterans ("DAV") and the Non–Commissioned Officers Association of the United States of America ("NCOA"). That action arose from the alleged shortcomings of both organizations in representing Thomas before the United States Department of Veterans Affairs. The Superior Court dismissed Thomas's complaint against DAV, presumably because substantially identical claims were still pending in federal court. The court later dismissed Thomas's remaining claims, concluding that it lacked personal jurisdiction over NCOA. We reverse and remand for further proceedings.

### I. Factual and Procedural Background

When he retired from the U.S. Army in 1989, Mr. Thomas[1] designated NCOA (a

---

1. Thomas currently resides in Germany but considers himself a citizen of Tennessee. He represents himself in these consolidated appeals.

veterans service organization) as his representative to present claims for benefits to the Veterans Administration.[2] In 1997 he designated DAV to take over that function. Thomas was given a comprehensive medical evaluation by the Department of Veterans Affairs in 1991, and a VA doctor reached a "working diagnosis" that Thomas had schizophrenia.[3] Thomas complains that he has suffered injury because DAV and NCOA (as well as the VA) failed to inform him of this tentative diagnosis. Thomas also alleges that both organizations failed properly to represent his interests before the Department of Veterans Affairs.

Thomas brought an action against DAV and NCOA in the United States District Court alleging, among other claims, gross negligence, fraudulent concealment, and legal malpractice. On January 21, 2005, the District Court dismissed Thomas's action for lack of subject matter jurisdiction;[4] he appealed that decision to the United States Court of Appeals. On March 21, 2005, Thomas filed this action in Superior Court, essentially restating the common law claims against DAV and NCOA which had been dismissed by the District Court.[5] On September 29, 2005, the D.C. Circuit af-

firmed the judgment dismissing the federal complaint.[6]

Meanwhile, on June 14, 2005, the Superior Court granted DAV's motion to dismiss, without prejudice. On October 11, 2005, the court granted NCOA's motion to dismiss for lack of personal jurisdiction. Thomas timely appealed both orders, and we consolidated the appeals.

## II. Dismissal of Thomas's Claims Against DAV

■ DAV moved the trial court to dismiss Thomas's complaint on a single ground-that "[a]s this case is presently ongoing before another court, the Court of Appeals for the District of Columbia Circuit, it would be inappropriate for this matter to go forward before this Court at this time." Because the trial court granted the motion without explanation, we assume it accepted DAV's argument. The trial court erred in doing so.

DAV argues that the trial court was "plainly correct" to dismiss Thomas's complaint but cites only a single case to support the trial court's order: *Jones v. John W. Glen, Inc.*, 130 U.S.App. D.C. 153, 397 F.2d 714 (1968). *Jones* does not support DAV's argument or the trial court's dis-

2. Effective in 1989, the Veterans' Administration was redesignated as the Department of Veterans Affairs. 102 Stat. 2635.

3. The doctor concluded that Thomas had "persistent auditory hallucinosis which is troubling, so a diagnosis of schizophrenia probably is the most likely correct diagnosis. Some of the other adjunct symptoms of schizophrenia are not present, however, but this will be the working diagnosis for him. He has slight social and industrial disability resulting from this." *See Thomas v. Principi*, 265 F.Supp.2d 35, 36 n. 1 (D.D.C.2003), *aff'd in part and rev'd in part*, 364 U.S.App. D.C. 326, 328, 394 F.3d 970, 972 (2005) (remanding claim that the VA had committed medical malpractice and intentionally caused Thomas

emotional distress by failing to inform him of the working diagnosis of schizophrenia).

4. *Thomas v. Non-Commissioned Officers Ass'n*, Civil Action No. 04-0193 (D.D.C. January 21, 2005).

5. His Superior Court complaint alleges gross negligence, fraudulent concealment, legal malpractice, intentional infliction of emotional distress, "medical negligent and legal misconduct," making of intentional false statements and misrepresentations, fraud and conspiracy to commit fraud, breach of contract, and breach of fiduciary duty.

6. *Thomas v. Non-Commissioned Officers Ass'n*, No. 05-7042 (D.C.Cir. September 29, 2005).

missal, however. In *Jones,* the United States District Court for the District of Columbia dismissed an action on the ground that a civil complaint based on the same claims had been filed and was pending in the District of Columbia Court of General Sessions. *Id.* at 154, 397 F.2d at 715. The Circuit Court of Appeals reversed the dismissal and remanded the case because it could not determine whether the District Court's dismissal "rested entirely on the pendency of two actions...." *Id.* at 155, 397 F.2d at 716. The court in *Jones* explained that it was "not unaware of the problems of the two trial courts here involved and the burdens that these proceedings entail in having two courts be ·concerned over a single case." *Id.* Notwithstanding that burden, the court concluded that "it is clear that the proper procedure is for the District Court to enjoin the prosecution of the case in the Court of General Sessions." *Id.* at 155 n. 1, 397 F.2d at 716 n. 1, citing *Smith v. Leigh,* 101 U.S.App. D.C. 225, 248 F.2d 85 (1957). Thus, *Jones* in no way supports dismissal of the underlying complaint in this case. If anything, it stands for the proposition that one suit should be stayed while the other proceeds.[7]

■ In a case postured procedurally like this one, this court held that the Municipal Court erred in dismissing a civil action on the ground that a similar action had been previously filed, and was still pending, in District Court. In *Coates v. Ellis,* 61 A.2d 28 (D.C.1948), the parties were involved in an automobile collision and Mrs. Ellis brought a personal injury action in District Court. *Id.* at 29. Before service of process was completed, Mr.

Coates filed in the Municipal Court a suit for damages arising out of the same collision. Mrs. Ellis moved to dismiss the Municipal Court action based on the prior filing and pendency of her District Court action, and the trial judge dismissed "without prejudice." *Id.* We reversed, explaining that the Municipal Court "had no right to dismiss the case." *Id.* at 31.

The dismissal, though stated to be "without prejudice," would almost certainly result in confusion and in prejudice to plaintiff if the District Court action did not proceed to final determination. *Comity, as we have previously pointed out, can best be maintained in such a situation, not by dismissing the action, but by staying proceedings therein.* That course has been prescribed in several other cases. We therefore order the judgment below reversed, with instructions to vacate the order of dismissal, and to enter an order staying proceedings until the final determination of the pending District Court action.

*Id.* at 31–32 (emphasis added) (footnotes omitted). *See also Batter v. Dixon,* 177 A.2d 893, 894 (D.C.1962) ("As that issue has already been submitted to the District Court for determination, ... the trial court acted within proper bounds in curtailing the instant action, to await the final outcome of the preceding litigation."); *Bradley v. Triplex Shoe Co.,* 66 A.2d 208 (D.C.1949) (confirming Municipal Court's authority to stay its own proceedings pending determination of an action in the District Court). There is, of course, no general requirement that the Superior Court defer to the District Court when

---

7. When *Jones* and *Smith* were decided, the local trial court was a court of limited civil jurisdiction; both it and the United States District Court were part of the same court system. The jurisdictional cap on civil suits was $3,000 in the Municipal Court, D.C.Code § 11–755(a) (1951), and $10,000 in its successor, the Court of General Sessions, D.C.Code § 11–961(a) (1967). Now, of course, the Superior Court is "a court of general jurisdiction with the power to adjudicate any civil action at law or equity involving local law." *Andrade v. Jackson,* 401 A.2d 990, 992 (D.C. 1979); D.C.Code § 11–921 (2001).

related actions are pending in both courts, but it often will be prudent and efficient to do so, especially when the federal court was the first to acquire jurisdiction.[8]

We have not found—and have not been directed to—any authority that has overturned *Coates* or even called it into question. Its reasoning remains sound. We therefore hold that the trial court erred in dismissing Thomas's complaint against DAV, and we reverse and remand for further proceedings.[9] We decline DAV's invitation to affirm on an alternative ground that was not raised before the Superior Court.

### III. Dismissal of Thomas's Claims Against NCOA

■ NCOA moved to dismiss Thomas's complaint, asserting that the trial court lacked personal jurisdiction over it or, in the alternative, that this jurisdiction provides an inconvenient forum. NCOA argued below and before this court that Thomas had failed to establish that it engaged in the "transact[ion of] business in the District of Columbia" within the meaning of this jurisdiction's long-arm statute, D.C.Code § 13–423(a)(1) (2001). It submitted an affidavit of its president, Gene Overstreet, averring that NCOA is a Texas non-profit corporation, is headquartered in San Antonio, Texas, does not own property or even have an office within the District of Columbia, and "[o]ther than meeting with officials and representatives from various federal agencies and/or providing testimony before Congress, NCOA has not otherwise engaged in any persistent course of conduct in D.C." NCOA argues that its contacts and meetings with federal officials and its testimony before congressional representatives cannot serve as a basis for personal jurisdiction under § 13–423 because such activities fall within the so-called "government contacts" exception to in personam jurisdiction, which applies when non-residents enter "into the District of Columbia ... for the purpose of contacting federal government agencies...." *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C.1976) (en banc). We hold that the trial court acted prematurely in granting NCOA's motion to dismiss because there are unresolved factual questions concerning the applicability of the government contacts exception.

In *Environmental Research*, a Massachusetts corporation hired a District of Columbia consulting firm to prepare an application for a construction grant and to assist in processing the application through the Environmental Protection Agency (EPA). 355 A.2d at 810. We accepted the trial court's finding "that Environmental Research was an independent contractor and not an agent." *Id.* at 812 n. 7. When a dispute arose over payments, the consulting firm filed a breach of contract action in Superior Court, but the trial

---

**8.** *See* E.H. Schopler, Annotation, *Stay of Civil Proceedings Pending Determination of Action in Federal Court in Same State,* 56 A.L.R.2d 335, 338–39 (1957 & 2007 Supp.) ("[T]he state courts, with only a few exceptions, have recognized the power to stay a proceeding until determination of a pending federal action. The exercise of this power is not a matter of right, but a matter of comity and discretion.").

**9.** DAV urges us to affirm the judgment of the Superior Court "as the dismissal was proper

at the time it was ordered." Because the dismissal of the federal suit has now been affirmed, however, DAV concedes that Thomas may "re-file his claims in the Superior Court, or in some other court, as he sees fit." We do not agree that the dismissal by the Superior Court was proper at the time it was ordered, and Thomas might encounter new procedural obstacles if we merely allowed him to re-file his claims. We therefore reverse and remand for reinstatement of the complaint.

court quashed service of process and dismissed the complaint for lack of personal jurisdiction. *Id.* at 810. We affirmed, on the ground that the Massachusetts corporation's contacts with the District of Columbia fell short of satisfying the due process requirements for exercising long-arm jurisdiction. *Id.* at 811. Citing the "government contacts" principle articulated in *Mueller Brass Co. v. Alexander Milburn Co.,* 80 U.S.App. D.C. 274, 152 F.2d 142 (1945), we explained:

> [T]he "government contacts" exception . . . finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry. To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.

*Environmental Research,* 355 A.2d at 813 (footnotes omitted). We held that "[t]he mere fact that a nonresident has retained the professional services of a District of Columbia firm, thereby setting into motion the resident party's own activities within this jurisdiction, does not constitute an invocation by the nonresident of the benefits and protections of the District's laws." *Id.* at 812. We also held that two visits to the EPA by officials of the Massachusetts corporation fell within the "government contacts" exception. *Id.*

We distinguished *Environmental Research* in a more recent case, pointing out that the new lawsuit was brought "by the out-of-state entity against its own agent acting within the District of Columbia on the out-of-state entity's behalf on a cause of action directly related to that activity." *Lex Tex Ltd., Inc. v. Skillman,* 579 A.2d

244, 249 (D.C.1990). "The activities which [were] the very basis of the suit [in *Lex Tex* ] were undertaken in the defendants' capacity as the agent of and on behalf of the plaintiff's predecessor in interest." *Id.* "To the extent, then, that any petitioning of the government was taking place, it was that of the [plaintiff], not [the defendant]." *Id.* at 250. Answering a question certified by the United States Court of Appeals for the District of Columbia Circuit, we concluded:

> [O]ne can hardly demand the right to come to the District of Columbia to pursue activities exclusively on behalf of an out-of-state principal and expect to be absolutely immune from suit here by that principal for causes of action arising directly out of the performance of such activities. The "government contacts" principle does not extend so far.

579 A.2d at 250. We cannot tell from the present record whether the Superior Court has personal jurisdiction over NCOA based on the principles discussed in *Lex Tex.*

■ ■ When no evidentiary hearing is conducted, the plaintiff may satisfy its burden by making a *prima facie* showing that the court has personal jurisdiction over the defendant. *Edmond v. United States Postal Service General Counsel,* 292 U.S.App. D.C. 240, 249, 949 F.2d 415, 424 (1991). The plaintiff "may rest [his] argument on [his] pleadings, bolstered by such affidavits and other written materials as [he] can otherwise obtain." *Mwani v. bin Laden,* 368 U.S.App. D.C. 1, 7, 417 F.3d 1, 7 (2005). *Accord,* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1351, at 305 (2004). "We construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in his favor." *DiStefano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir.2001).

*Accord, Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989).

Appellant Thomas's complaint alleged that "[d]efendant NCOA, . . . at all times relevant, provided legal representation to Plaintiff from one of its offices located in . . . Washington, D.C." In his opposition to NCOA's motion to dismiss, Thomas asserted that "each and every one of Thomas' claims of acts and omissions alleged and complained against NCOA . . . were committed and/or arose in D.C., from one of NCOA's satellite offices or from the Department of Veterans Affairs . . . located in the [District of Columbia]." He also claimed that "NCOA met with Plaintiff and conducted business with Plaintiff from its satellite office it maintained in the District between 1989 and 1996, at or nearby DVARO then at 941 Capit[o]l and/or thereby, and still conducts a very substantial amount of its business in the District. . . ." In contrast, Mr. Overstreet states in his affidavit that "NCOA does not now and has never maintained or had an office in D.C.," but the Superior Court did not hold an evidentiary hearing to resolve this conflict, nor did it make any factual findings with respect to the issue of personal jurisdiction.

Appellant Thomas did not make his assertions of fact in affidavit form, but even if we discount them for this reason, Mr. Overstreet's affidavit acknowledges that NCOA's officers and personnel meet with officials and representatives of federal agencies and testify before Congress. "The Department of Veterans Affairs ('VA') is among those federal agencies that NCOA has met with at times in D.C." Mr. Overstreet does not say how frequently this occurs, but Mr. Thomas attached to his opposition a printout from NCOA's website which states that it maintains a National Capital Office in Alexandria, Virginia.

The record before us does not demonstrate that the Superior Court lacked personal jurisdiction over NCOA. Unanswered questions include whether NCOA maintains an office in the District of Columbia, or did so at relevant times. Even if it did not have an office here, what is the nature and extent of its activity in the District? If it maintains an active presence in the District of Columbia representing veterans, then perhaps NCOA is subject to the jurisdiction of our courts. Was NCOA the agent of Mr. Thomas? Did it represent Mr. Thomas before the VA (and, if so, how and to what extent)? Answers to these and related questions will help to determine whether the jurisdictional issue is governed by *Environmental Research* or *Lex Tex. See also Shoppers Food Warehouse v. Moreno,* 746 A.2d 320 (D.C. 2000) (en banc) (comprehensive discussion of long-arm jurisdiction).

For the reasons discussed, the judgment of the Superior Court is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*