*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-SP-238

RINAT AKHMETSHIN, APPELLANT,

v.

WILLIAM BROWDER, APPELLEE.

On Certification from
the United States Court of Appeals
for the District of Columbia Circuit
(19-7129)

(Argued September 23, 2021                    Decided May 26, 2022)

*Alexandra Elenowitz-Hess*, with whom *Michael Tremonte* and *Kim Hoyt Sperduto* were on the brief, for appellant.

*Michael Gottlieb*, with whom *Stephanie L. Miner* was on the brief, for appellee.

Before GLICKMAN, BECKWITH, and MCLEESE, *Associate Judges*.

Opinion of the court by *Associate Judge* BECKWITH.

Dissenting opinion by *Associate Judge* GLICKMAN at page 14.

BECKWITH, *Associate Judge*: The United States Court of Appeals for the

District of Columbia Circuit has certified four questions of law concerning the so-

called government contacts exception to this court:[1]

1. May nonresident aliens who are citizens only of foreign countries invoke the government contacts exception?

2. If the first question is answered in the affirmative, must those nonresident aliens possess cognizable rights pursuant to the First Amendment generally, or any specific clause thereunder, in order to invoke the exception?

3. Does the government contacts exception extend to efforts to influence federal policy other than direct contacts with agents, members, or instrumentalities of the federal government?

4. If the third question is answered in the affirmative, what standard governs in determining whether activities not involving direct contacts with the federal government are covered under the exception?

These questions arise in the context of a defamation suit filed by Rinat Akhmetshin against William Browder in the United States District Court for the District of Columbia. Because Mr. Browder's purportedly defamatory statements were made outside the District of Columbia, Mr. Akhmetshin, a D.C. resident, sought to establish personal jurisdiction over Mr. Browder, a citizen of the United Kingdom who is not a resident of the District or the United States, under § (a)(4) of

---

[1] *See* D.C. Code § 11-723 (2012 Repl.).

the D.C. long-arm statute.[2]  That provision permits a court in the District of Columbia to exercise personal jurisdiction over claims alleging that a defendant's act outside the District caused tortious injury in the District, as long as one of three "plus factors" is satisfied, establishing a sufficient connection between the defendant and the District.  D.C. Code § 13-423(a)(4) (2012 Repl.); *see also Etchebarne-Bourdin v. Radice*, 982 A.2d 752 (D.C. 2009).

The district court determined that whether the exercise of personal jurisdiction over Mr. Browder comports with the D.C. long-arm statute turns on whether Mr. Browder has engaged in a "persistent course of conduct" in the District within the meaning of § (a)(4).  *See Akhmetshin v. Browder*, 407 F. Supp. 3d 11, 20–22 (D.D.C. 2019).  Mr. Browder contends that he has not, because his conduct within the District consisted of "government contacts" that cannot be used to establish a "persistent course of conduct" in the District.[3]  The certified questions thus involve whether

---

[2] The purportedly defamatory statements consist of four public comments made in July 2017—two tweets, a statement published in *Business Interview*, and a statement made in a television interview—that link Mr. Akhmetshin to Russian intelligence.  *See Akhmetshin v. Browder*, 983 F.3d 542, 548 (D.C. Cir. 2020).  The facts underlying Mr. Akhmetshin's claim have been recounted in more detail by the U.S. Court of Appeals and the U.S. District Court.  *See id.*; *Akhmetshin v. Browder*, 993 F.3d 922 (D.C. Cir. 2021); *Akhmetshin v. Browder*, 407 F. Supp. 3d 11 (D.D.C. 2019).

[3] These contacts include meetings with members of Congress, testimony before governmental bodies, interview appearances, book promotion events, and

someone who has renounced his U.S. citizenship can invoke the "government contacts" principle and, if so, whether Mr. Browder's activities in the District fall within the exception.

When considering a certified question, however, "we are not limited to the designated question[s] of law but may 'exercise our prerogative to frame the basic issues as we see fit for an informed decision.'" *Delahanty v. Hinckley*, 564 A.2d 758, 760 (D.C. 1989) (quoting *Penn Mut. Life Ins. Co. v. Abramson*, 530 A.2d 1202, 1207 (D.C. 1987)). Mr. Akhmetshin urges us to resolve the questions about Mr. Browder's amenability to suit in the District on grounds not directly presented in the certified questions—namely, that the government contacts exception does not apply to assertions of jurisdiction under § (a)(4) of the long-arm statute at all, at least insofar as they rest on a "persistent course of conduct" in the District. If it does not, then we need not reach questions about the scope of that exception when or if it applies.

## I.

The government contacts principle predates the enactment of the D.C. long-

---

other social and professional events related to Mr. Browder's "advocacy for measures holding human rights abusers in Russia accountable for their misdeeds." *Akhmetshin*, 983 F.3d at 546.

arm statute, originating as a way of determining what it meant to be "doing business" in the District within the meaning of the service-of-process statute then in effect. *See Mueller Brass Co. v. Alexander Milburn Co.*, 152 F.2d 142, 143–44 (D.C. Cir. 1945) (holding that employing a representative in the District to "gather[] information from" and "maintain contact with" federal government agencies does not "constitute doing business in the District of Columbia" within the meaning of D.C. Code § 13-103 (1940)); *see also Fandel v. Arabian Am. Oil Co.*, 345 F.2d 87, 89 (D.C. Cir. 1965) (describing *Mueller Brass* and other cases interpreting "doing business" in the service-of-process statute as "recogni[zing] that Washington presents many business organizations with special needs for a continuous and ponderable physical presence there, which needs are not those customarily associated with strictly commercial operations," and which were thus "outside the range of Congressional contemplation of the scope of 'doing business' as that phrased is used in [the statute]").

This court first considered the applicability of the doctrine to the D.C. long-arm statute in *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813–14 (D.C. 1976) (en banc). The basis for long-arm jurisdiction at issue there was § (a)(1), which provides for the exercise of personal jurisdiction as to a claim of relief arising from a defendant's "transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). The en banc

court described § (a)(1)'s "transacting any business" provision as a more liberal amendment to the "doing business" criterion of the service-of-process statute, and concluded that "Congress did not intend to set aside [the government contacts] principle when it enacted the . . . long-arm statute." *Env't Rsch.*, 355 A.2d at 813 & n.10. But the opinion leaves unclear whether the so-called exception would apply to other provisions of the long-arm statute. *Compare, e.g.*, *id.* at 813 ("The rationale for the 'government contacts' exception to the District of Columbia's long-arm statute does not hinge upon the wording of the statute. Rather, it finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry."), *and id.* at 810–11 (concluding that the D.C. long-arm statute extends to the extent permitted by the Due Process Clause), *with, e.g.*, *id.* at 813 (holding that defendants' representatives' visits to D.C. to consult with federal government officials cannot "constitute the transaction of business here"), *and id.* at 814 (noting that "activities . . . consist[ing] solely of contacts with the federal government[] d[o] not constitute the transaction of business within the meaning the statute" and "[a]bsent activities which can place a nonresident within the scope of the long-arm statute, no personal jurisdiction may be asserted over him").

To date, this court has not applied the government contacts exception to

§ (a)(4)—or to any provision of the long-arm statute other than § (a)(1).[4]  And our post-*Environmental Research* cases send similarly conflicting messages about the conceptual basis for the doctrine.  *Compare, e.g.*, *Rose v. Silver*, 394 A.2d 1368, 1373–74 (D.C. 1978) ("[T]he 'government contacts' principle . . . deems one not to

---

[4] This court's opinions in *Environmental Research*, 355 A.2d at 814 n.13, *Rose v. Silver*, 394 A.2d 1368, 1368 (D.C. 1976), *Beachboard v. Trustees of Columbia University*, 475 A.2d 398, 401 (D.C. 1984), and *Lex Tex Ltd. v. Skillman*, 579 A.2d 244, 244 (D.C. 1990), all concerned assertions of personal jurisdiction limited to "transacting any business" under § (a)(1).  In *Hughes v. A.H. Robins Co.*, the jurisdictional question was one of general personal jurisdiction and so did not involve the long-arm statute; the statute in question was D.C. Code § 13–334(a) (1981), the successor to the service-of-process statute under which the government contacts exception was first articulated.  *See* 490 A.2d 1140, 1143 (D.C. 1985); *see also AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850, 851 n.2 (D.C. 1981).  In *Thomas v. Disabled American Veterans Ass'n*, this court reversed the trial court's determination that it did not have personal jurisdiction over the defendant in light of unanswered questions about the applicability of the government contacts exception.  930 A.2d 997, 1001, 1003 (D.C. 2007).  It is not clear from the court's opinion which provision of the long-arm statute may have supplied a basis for personal jurisdiction, and the opinion does not appear to turn on the answer to that question.  Nevertheless, the focus on business conducted out of the defendant's D.C. satellite office resembles personal jurisdiction cases under § (a)(1).  *See id.* at 1003.  Finally, this court's opinion in *Companhia Brasileira Carbureto de Calcio v. Applied Industrial Materials Corp.* does not turn on a particular provision of the long-arm statute, but the D.C. Circuit—in certifying the issue to the court—was considering long-arm jurisdiction under § (a)(1).  *See* 35 A.3d 1127, 1132 n.4 (D.C. 2012); *see also* 640 F.3d 369, 372–73 (D.C. Cir. 2011).

As Mr. Browder and the dissent point out, however, the D.C. Circuit has applied the exception to § (a)(4), as has the federal district court in D.C.  *E.g.*, *Crane v. Carr*, 814 F.2d 758, 761 (D.C. Cir. 1987); *United Therapeutics Corp. v. Vanderbilt Univ.*, 278 F. Supp. 3d 407, 417–18 (D.D.C. 2017); *LG Display Co. v. Obayashi Seikou Co.*, 919 F. Supp. 2d 17, 26–27 (D.D.C. 2013).  None of these cases analyzed the basis for applying the exception in § (a)(4) cases.

be transacting business in the District of Columbia, or, perhaps more accurately, it exempts one from assertions of personal jurisdiction in the District, if the 'sole contact with the District consists of dealing with a federal instrumentality.'" (quoting *Env't Rsch.*, 355 A.2d at 813)), *and Companhia Brasileira Carbureto de Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1131 (D.C. 2012) (describing the government contacts principle as an "exception under which courts in the District of Columbia would refrain from exercising personal jurisdiction even though the requirements of due process and the long-arm statute otherwise would be satisfied"), *with, e.g.*, *Lex Tex Ltd. v. Skillman*, 579 A.2d 244, 244 (D.C. 1990) (describing a certified question from the D.C. Circuit regarding the application of the government contacts exception as a question asking us to "interpret the District of Columbia 'long-arm' statute"), *and Rose*, 394 A.2d at 1373 (describing the pre-*Environmental Research* cases as "interpreting the long-arm statute previously in effect" and "[e]ssentially . . . saying that government information-gathering in the District did not amount to doing business here").

Unsurprisingly, then, there has been ongoing confusion as to the scope of the principle in the § (a)(1) context. *Compare, e.g.*, *Rose*, 394 A.2d at 1368 (suggesting that a defendant would have to show that "long-arm jurisdiction would violate the First Amendment" to fall within the government contacts principle), *with Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983) (holding that

appearances in the District "made in an attempt to influence government action" and therefore "undoubtedly qualify[ing] as exercises in petitioning the government" fall within the government contacts exception without considering whether the exercise of jurisdiction based on those contacts would violate defendants' First Amendment rights). Mindful of this uncertainty, we consider whether the principle applies in § (a)(4) cases.

## II.

If our case law does not compel the conclusion that the government contacts exception applies to cases under § (a)(4), neither does the text of that provision. Subsection (a)(1) involves "transacting any business," and so in considering that provision it made sense to look to how the court had defined "doing business in the District of Columbia in the jurisdictional sense," and thus to the doctrine articulated in *Mueller Brass*, 152 F.2d at 144, under the earlier service-of-process provision. The portion of § (a)(4) at issue here, in contrast, does not refer to "doing business."[5]

---

[5] This case does not involve, and we do not address, the other "plus factors" in § (a)(4), including "regularly do[ing] or solicit[ing] business" or "deriv[ing] a substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." The text of § (a)(4) indicates that the "persistent course of conduct" plus factor addresses conduct other than doing or soliciting business. *See* D.C. Code § 13-423(a)(4) (providing that D.C. courts may exercise personal jurisdiction over a person causing tortious injury in the District by an act outside the District "if he regularly does or solicits business, engages in any *other* persistent

And nothing in the text of § (a)(4) suggests that "persistent course of conduct" refers only to conduct not associated with the government.

Mr. Browder argues that § (a)(4) nonetheless raises concerns more similar to those articulated in *Mueller Brass*, such that the case for applying the government contacts exception to cases under § (a)(4) is at least as strong—if not stronger—than the case for applying it to cases under § (a)(1). That is because under § (a)(4) defendants can be haled into court for out-of-district acts with no connection to the acts forming the "persistent course of conduct in the District." *See Etchebarne-Bourdin*, 982 A.2d at 762–63. Thus, Mr. Browder argues that, like in *Mueller Brass* and its progeny, which also "involved claims for relief that were unrelated to the defendants' contacts with the government," assertions of personal jurisdiction under § (a)(4) "could raise serious due process concerns." *See Lex Tex*, 579 A.2d at 246–47. But the requirement of a "*persistent* course of conduct" addresses those concerns, ensuring that "there are minimum contacts with the forum sufficient to satisfy due process concerns." *Etchebarne-Bourdin*, 982 A.2d at 762.[6]

---

course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District" (emphasis added)).

[6] Mr. Browder argues that the "plus factor" does not safeguard a defendant's due process rights where the only contacts supporting a "persistent course of conduct" are government contacts because such contacts "are not 'contacts' within

Moreover, many if not all of the concerns that underlie the exception as it has been applied in § (a)(1) cases can be protected by requiring defendants to show that the exercise of jurisdiction would violate their constitutional rights or implicate other existing doctrines such as forum non conveniens.[7] Indeed, Mr. Browder often frames his argument for the continuing vitality of the government contacts exception in due process terms. For example, he argues that nonresidents who travel to the District to engage with the federal government on public policy matters have not "purposefully avail[ed] [themselves] of the privilege of conducting activities within [D.C.]." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). We need not extend an

---

the meaning of *International Shoe* and its progeny." *Hughes*, 490 A.2d at 1145 n.4. As we note *infra*, Mr. Browder's argument is not a sufficient basis for adopting a nontextual exception to long-arm jurisdiction under § (a)(4) but a constitutional argument that can be addressed under a traditional due process analysis. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (addressing whether the exercise of jurisdiction comports with due process).

[7] *Cf. Zeneca Ltd. v. Mylan Pharms., Inc.*, 173 F.3d 829, 834–36 (Fed. Cir. 1999) (opinion of Rader, J.) (concluding that reversal of finding that Maryland courts had personal jurisdiction over corporate defendant that had petitioned federal agency's Maryland office was warranted under a "traditional Due Process analysis" because "[defendant's] contacts [were] not with the state of Maryland at all" but "involve[d] the federal government whose office . . . happen[ed] to be in that state," such that defendant had not "purposefully availed itself of the benefits of the laws of Maryland or purposefully directed its activities at Maryland residents"). *But cf. id.* at 833–34 (opinion of Gajarsa, J.) (concluding that "the exercise of personal jurisdiction over [defendant] in Maryland would be permissible" under "traditional notions of fair play and substantial justice" and thus that application of a separate government contacts exception was necessary to take into account "concerns . . . not adequately addressed by a traditional analysis of personal jurisdiction").

"exception" under District law to § (a)(4) to capture this concern, as it is already a constitutional prerequisite to the exercise of specific personal jurisdiction. *See id.* Defendants can also raise many of the concerns that have informed the government contacts principle in arguing that the exercise of personal jurisdiction would not be constitutionally "reasonable." *See, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (describing factors going to the "reasonableness" of exercising jurisdiction, including "the forum State's interest in adjudicating the dispute" and "the shared interest of the several States in furthering fundamental substantive social policies"); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985) ("[R]equirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." (quoting *World-Wide Volkswagen*, 444 U.S. at 292)).

Other underpinnings of the government contacts principle can also be protected through existing doctrines and constitutional inquiries. We recognized in *Lex Tex* that concerns about D.C. becoming a "national judicial forum" can be considered "in determining whether to dismiss on the ground of *forum non conveniens*." 579 A.2d at 249 n.10 (quoting *Env't Rsch.*, 355 A.2d at 813). And to the extent the government contacts exception has a "First Amendment . . . underpinning," this court already suggested in *Rose* that a First Amendment–based

government contacts exception would require a defendant to show that "long-arm jurisdiction would violate the First Amendment." 394 A.2d at 1374; *see also Lex Tex*, 579 A.2d at 244, 249 (concluding that the government contacts principle did not apply because the exercise of personal jurisdiction in the District did not threaten either party's First Amendment rights); *Companhia Brasileira*, 35 A.3d at 1132–33 (recognizing the importance of the right to petition the government but holding that the government contacts exception does not apply to fraudulent government petitions because "it does not offend the First Amendment to recognize a fraud exception to the government contacts exception").[8] That constitutional inquiry does not depend on the scope of the exception under District law.

Though a prophylactic principle of District law might avoid some of these constitutional questions, we are not persuaded that a case has been made for reading such an exception into § (a)(4). In light of the conceptual uncertainty underlying the exception, it is unclear what the proper scope of such an exception would be. For this reason and because we see no indication—textual or otherwise—that the

---

[8] Whether "concern over the venue of litigation" could make out a First Amendment claim is a separate question of federal constitutional law that we need not address. *See Lex Tex*, 579 A.2d at 249 n.13; *see also Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780 n.12 (1984) ("[W]e reject categorically the suggestion that invisible radiations from the First Amendment may defeat jurisdiction otherwise proper under the Due Process Clause."); *Calder v. Jones*, 465 U.S. 783, 790–91 (1984).

legislature intended the exception to apply to § (a)(4), questions about the scope and applicability of any exception to § (a)(4) are better left for the legislature.

## III.

For the foregoing reasons, we decline to construe the "persistent course of conduct" requirement in § (a)(4) of the D.C. long-arm statute to exclude government contacts. Should Mr. Browder's arguments that he has not purposefully availed himself of the protections and benefits of D.C. law by engaging in federal policy advocacy in the District nonetheless bear on the constitutionality of the district court's exercise of personal jurisdiction over him as to Mr. Akhmetshin's claims, that is a question the federal courts can resolve.

In accordance with D.C. Code § 11-723(g), the Clerk is directed to transmit a copy of this opinion to the United States Court of Appeals for the District of Columbia Circuit and to each of the parties.

*So ordered.*

GLICKMAN, *Associate Judge*, dissenting: I respectfully dissent from the majority's conclusion that the government contacts exception does not apply to assertions of long-arm jurisdiction under § (a)(4) of the District of Columbia long-arm statute, D.C. Code § 13-423 (2012 Repl.), that are based on the defendant's

"persistent course of conduct" in the District. Until now, the courts confronted with this question — both the D.C. Circuit and the D.C. District Court — have understood that the exception applies to § (a)(4) just as it concededly applies to § (a)(1) of the long-arm statute.[9] In my view, those courts correctly understood the scope of the exception. When this court, sitting en banc, first recognized it, the court emphasized that "[t]he rationale for the 'government contacts' exception to the District of Columbia's long-arm statute does not hinge upon the wording of the statute," and instead stemmed from "the unique character of the District as the seat of national government."[10] As I explain below, that means the exception's rationale is equally

---

[9] *See, e.g.*, *Crane v. Carr*, 814 F.2d 758, 761-62, 764 (D.C. Cir. 1987) ("D.C. Code § 13-423(a)(4) . . . requires something more than effects in the District caused by acts done elsewhere. The pivotal question with respect to that subsection's application here is whether [defendant's] ties to the District of Columbia amount to a persistent course of conduct . . . in the District . . . . The enumeration does not include the [defendant's] government contacts relating to grant awards or other [defendant] connections with federal agencies. . . . [U]nder D.C. Code § 13-423(a)(4), [plaintiff] should be allowed to seek a more detailed delineation of [defendant's] activities in the District, other than the [defendant's] government contacts." (internal citations and quotation marks omitted)); *United Therapeutics Corp. v. Vanderbilt Univ.*, 278 F. Supp. 3d 407, 417 (D.D.C. 2017) ("Offices established in the District to lobby the federal government do not constitute a 'persistent course of conduct' under section 13-423(a)(4)."); *LG Display Co. v. Obayashi Seikou Co.,* 919 F. Supp. 2d 17, 26-27 (D.D.C. 2013) (rejecting argument for in personam jurisdiction under § 13-423(a)(4) based on foreign defendants' submission of patent applications to the U.S. Patent and Trademark Office; "[s]tated simply, a party's contacts with government agencies do not enter the jurisdictional calculus"), *aff'd*, 615 F. App'x 954 (Fed. Cir. 2015).

[10] *Env't Rsch. Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813

applicable whether the basis for asserting long-arm jurisdiction over a person outside the District of Columbia is the person's "transacting any business in the District of Columbia," as provided in § 13-423(a)(1), or that the person "engages in any other persistent course of conduct, . . . in the District of Columbia," as provided in § 13-423(a)(4).[11] Thus, unlike the majority, I would address the questions posed to us by

_____

(D.C. 1976) (en banc).

[11] In pertinent part, D.C. Code § 13-423(a) states:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —
>
> (1) transacting any business in the District of Columbia;
>
> . . .
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]

Although long-arm jurisdiction over a person under § (a)(4) may exist if the person "[1] regularly does or solicits business, [2] engages in any other persistent course of conduct, or [3] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia," the majority opinion addresses only whether the government contacts exception applies to the second of those three so-called "plus factors" (engaging in a "persistent course of conduct" in the District). In concluding that it does not, the majority implies that the exception might apply to one or both of the other plus factors. *See ante* at 9 n.5. Perhaps the majority perceives an incongruity in applying the government contacts exception to "transacting any business" in the District (under § (a)(1)) but not to "regularly

the D.C. Circuit with the answers offered at the conclusion of this dissent.

In the words of the en banc court in *Environmental Research*, the government contacts exception is a "long-standing and still vital doctrine that entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction."[12] In the ensuing years, this court has adhered to the view that "the unique concerns underlying the government contacts principle are as compelling today as they were when this court decided *Environmental Research*."[13] While the rationale for the exception has not been made entirely clear, it is not as elusive, in my view, as the majority opinion makes it out to be. The government contacts exception is not of constitutional dimension, but an interpretation of the District's long-arm statute based on weighty policy considerations.

The government contacts exception is not grounded in the Due Process

---

do[ing] or solicit[ing] business" in the District (under § (a)(4)). However, the majority opinion does not explain why the applicability *vel non* of the exception to the exercise of long-arm jurisdiction under § (a)(4) should turn on which plus factor is involved.

[12] 355 A.2d at 813.

[13] *Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1132 (D.C. 2012).

Clause. Our long-arm statute was enacted to extend personal jurisdiction of the District's courts virtually to the limits of due process.[14] The government contacts exception is an *exception* to the assertion of jurisdiction consistent with due process, so it must have a different rationale.

Nor is a satisfactory rationale for the government contacts exception to be found in the First Amendment right to "petition the Government for the redress of grievances" (or elsewhere in that Amendment). In the 1978 case *Rose v. Silver*, a division of this court did conclude that "the First Amendment provides the only principled basis for exempting a foreign defendant from suit in the District of Columbia, when its contacts are covered by [§ (a)(1) of] the long-arm statute and are sufficient to withstand a traditional due process attack."[15] But the foundation for

---

[14] Though, by its terms, not quite all the way to those limits, *see Mouzavires v. Baxter*, 434 A.2d 988, 991 (D.C. 1981) (en banc); *see also Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986). It has been noted that, while the "transacting business" language of § (a)(1) has been interpreted to be coextensive with the requirements of due process, § (a)(4) "has been construed more narrowly." *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citing *Crane*, 814 F.2d at 762).

[15] 394 A.2d 1368, 1374 (D.C. 1978). The *Rose* court expressly limited its conclusion to invocation of the government contacts exception to assertions of long-arm jurisdiction under § (a)(1), where the claim against the foreign defendant actually arises from that defendant's governmental contacts in the District. The court emphasized that its opinion did "not affect" invocation of the government contacts exception to preclude the assertion of long-arm jurisdiction under other statutory provisions, such as § (a)(4), that pertain to claims not arising from the

this conclusion, which has generated controversy as potentially conflicting impermissibly with the en banc *Environmental Research* decision,[16] was subsequently eroded when the Supreme Court "reject[ed] the suggestion that First Amendment concerns enter into the jurisdictional analysis" where jurisdiction is otherwise proper under the Due Process Clause because "the potential chill on protected First Amendment activity stemming from libel and defamation actions is already taken into account in the constitutional limitations on the substantive law governing such suits."[17] In any event, that the government contacts exception may prevent the assertion of long-arm jurisdiction from burdening the exercise of the First Amendment right to petition is a partial justification at best, for the exception unquestionably applies to government contacts *not* within the coverage of the right to petition[18] and, indeed, to contacts that do not implicate First Amendment rights at

---

defendant's governmental contacts. *Id.* at 1374 n.6.

[16] *See Companhia Brasileira*, 35 A.3d at 1133 n.5 (noting apparent conflict between *Environmental Research* and *Rose* and declining to decide whether the government contacts exception rests solely on the First Amendment); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786-87 (D.C. Cir. 1983) (same).

[17] *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also McDonald v. Smith*, 472 U.S. 479, 482-85 (1985) (holding that "there is no sound basis for granting greater constitutional protection to statements made in a petition [for the redress of grievances] than [to] other First Amendment expressions.").

[18] For example, the government contacts exception doubtless applies to persons invited to testify before Congress or provide information to Congressional committees, but no citizen has a right to do so under the Petition Clause, because

all.[19]  And for its part, the First Amendment protects a host of activities that do not in any way involve government contacts, while the exception to be explained is limited to contacts with the federal government.  A rationale based on the need to protect the exercise of First Amendment rights thus fails because it is simultaneously underinclusive (by not explaining the full scope of the government contacts exception) and overinclusive (by not explaining the limitation of the exception to contacts with the federal government).

Rather than being grounded in the Constitution, the government contacts exception is a matter of statutory interpretation.  It is based, fundamentally, on non-constitutional policy considerations deemed to accord with Congress's intent in

---

that Clause "does not grant to members of the public generally a right to be heard by public bodies making decisions of policy."  *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283 (1984).

[19] *See Robo-Team NA, Inc. v Endeavor Robotics*, 313 F. Supp. 3d 19, 25 (D.D.C. 2018) ("It is by no means established that the government contacts rule is in fact limited to activities that implicate the First Amendment . . . .  This Court has consistently held that government contracting activities fall within the scope of the government contacts rule."  (citing, inter alia, *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 25 (D.D.C. 2014)); *see also, e.g.*, *Fandel v. Arabian Am. Oil Co.*, 345 F.2d 87, 88-89 (D.C. Cir. 1965); *Morgan v. Richmond Sch. of Health & Tech., Inc.*, 857 F. Supp. 2d 104, 107-09 (D.D.C. 2012); *Lex Tex Ltd. v. Skillman*, 579 A.2d 244, 246-47 (D.C. 1990).  As explained below, the very cases that first articulated the government contacts exception applied it to business activities with the federal government not constituting the exercise of rights protected by the First Amendment.

enacting the District's current long-arm statute and its precursors. In *Environmental Research*, this court derived the exception to our current statute from its adumbration in 1945 by the D.C. Circuit in *Mueller Brass Co. v. Alexander Milburn Co.*[20] The jurisdictional statute at issue in that case provided for service of process on foreign corporations "doing business in the District."[21] Mueller Brass Co. was a corporation that "had large contracts which were obtained through Government agencies upon bids submitted pursuant to invitations and upon Government specifications."[22] The company did not perform those contracts in the District, but it had an office and employed an agent here "for the purpose of gathering information from Government departments and agencies and for convenience of communication between the Government and the company in respect to Government work being done throughout the country."[23] Recognizing the unique status of Washington, D.C. as "the seat of the national government"[24] as well as "[t]he manifold respects in which the Federal

---

[20] 152 F.2d 142 (1945). *See Env't Rsch.*, 355 A.2d at 813 ("This so-called 'government contacts' principle first was articulated in *Mueller Brass* . . . , when the predecessor of our present [long-arm] statute was in effect.").

[21] 152 F.2d at 143.

[22] *Id.*

[23] *Id.*

[24] *Id.* (quoting *Neely v. Phila. Inquirer Co.*, 62 F.2d 873, 875 (D.C. Cir. 1932)).

Government touches business concerns,"[25] and cognizant that the maintenance of a liaison office with federal agencies here was "necessary to the efficient and expeditious conduct of [the company's] work throughout the country for the Government," the *Mueller Brass* court concluded that the company's liaison activities with federal agencies in the District were not what Congress meant by "doing business in the District of Columbia."[26]

In *Environmental Research*, this court reasoned that "Congress did not intend to set aside" the government contacts "principle" articulated in *Mueller Brass* "when it enacted the present long-arm statute."[27] Echoing the D.C. Circuit's opinion, the en banc court said that the government contacts exception:

---

[25] *Id.* at 144.

[26] *Id.* For present purposes, it is worth highlighting the fact that in formulating an exception from long-arm jurisdiction for government contacts, *Mueller Brass* drew inspiration from the similar policy considerations underlying the exception for newsgathering activities in the District announced in *Neely*, under which "the mere collection of news material here for use in subsequent publication elsewhere . . . is not a doing of business here, within the meaning of the [jurisdictional] statute" then in effect. *Neely*, 62 F.2d at 875. The relationship between the newsgathering exception and the government contacts exception is notable because the newsgathering exception has been held to apply to the "persistent course of conduct" requirement in § (a)(4) of the District's current long-arm jurisdiction statute. *See Moncrief*, 807 F.2d at 222 n.9.

[27] 355 A.2d at 813.

finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry. To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.[28]

Applying the exception to the facts before it, the en banc court held that visits by a company's personnel to the District of Columbia to consult with government agency officials about obtaining a construction grant did not constitute the transaction of business in the District within the meaning of the long-arm statute, and thus were not a basis for the assertion of in personam jurisdiction.[29]

Given its underpinnings in *Mueller Brass* and *Environmental Research*, the government contacts exception is best understood, in my view, as primarily a manifestation of a policy of "comity" between the courts of the District of Columbia and the federal government.[30] The underlying notion is that basing District courts'

---

[28] *Id.*

[29] *Id.*

[30] *See SEC v. Banner Fund Int'l*, 211 F.3d 602, 612 (D.C. Cir. 2000) ("[C]omity summarizes in a brief word a complex and elusive concept — the degree of deference that a domestic forum must pay to the act of a foreign government not otherwise binding on the forum.") (internal quotation marks omitted). The practice

long-arm jurisdiction on a foreign defendant's contacts with the federal government in the District risks discouraging persons otherwise outside the District's jurisdiction from engaging in such contacts (or penalizing them for doing so), and thereby threatens to burden not just their interests but important interests of the federal government as well.[31] For that reason, while the exception encompasses communications with the government by persons exercising First Amendment rights, it is not limited to them. In other words, I think the Second Circuit was correct when it observed that "[a]lthough [the District of Columbia's] 'government contacts'

---

of comity by the District's courts vis-à-vis the federal government is not an unfamiliar concept. *See, e.g.*, *Thomas v. DAV Ass'n*, 930 A.2d 997, 1001 n.8 (D.C. 2007) (explaining that the court's "power to stay a proceeding until determination of a pending federal action . . . . is not a matter of right, but a matter of comity and discretion"). The commentary to D.C. App. R. 49(c)(2) cites "comity between the District and the federal government" as one reason counseling "deference to federal departments and agencies that determine to allow persons not admitted to the Bar to practice before them."

[31] *See, e.g.*, *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927) ("A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change; and where the legislative body does not itself possess the requisite information — which not infrequently is true — recourse must be had to others who do possess it."). The policy of declining long-arm jurisdiction to avoid burdening such activity is analogous to the well-recognized policy of not basing long-arm jurisdiction on a defendant's prior contacts with a jurisdiction's courts as party or witness. *See Lamb v. Schmitt*, 285 U.S. 222, 225 (1932) ("The general rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit, are immune from service of process in another, is founded, not upon the convenience of the individuals, but of the court itself.").

rule is based in part on the constitutional right 'to petition the Government for redress of grievances,' . . . it also appears to be based on non-constitutional policy considerations, such as the Judiciary's reluctance to interfere with the smooth functioning of other governmental entities."[32]

Although the *Environmental Research* court spoke of the "need for unfettered access to federal departments and agencies for the entire national *citizenry*,"[33] the exception is applicable whether the person communicating with the federal government is a citizen or not, because comity protects the interests of the federal government itself. The federal government has myriad interests (in gathering information, entering into contracts, and so forth) that would be hindered by impediments to its legitimate communications with non-citizens as well as citizens. Nothing in *Environmental Research* indicates an intention on the part of the court to restrict the government contacts exception to citizens.

This comity rationale for the government contacts exception is consistent

---

[32] *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*, 937 F.2d 44, 51 (2d Cir. 1991) (articulating an analogous rule to cover assertions of personal jurisdiction over the Palestine Liberation Organization in New York based on its activities as a permanent observer at the United Nations).

[33] 355 A.2d at 813 (emphasis added).

with, and helps explain, the cases in which this court has held the exception inapplicable, namely *Lex Tex Ltd. v. Skillman*[34] and *Companhia Brasileira Carbureto De Calcio v. Applied Industrial Materials Corp.*[35]  In *Lex Tex*, we held that an individual who came to the District of Columbia to pursue activities with the federal government exclusively on behalf of an out-of-state principal was not immune from suit here by that principal for claims arising directly out of such activities.  Allowing such litigation to proceed in the District of Columbia does not threaten the interests of the federal government, which lie in communicating with the *principal* in the course of its legitimate activities and operations; instead, "[i]f anything, it enhances [those interests]."[36]  In *Companhia Brasileira*, this court held that "a person who uses the government as an instrumentality of fraud, and thereby causes unwarranted government action against another, forfeits the protection of the government contacts exception."[37]  "Such fraud does not warrant our protection" under a comity rationale because the government has no interest in being fraudulently manipulated, as "use of the known lie as a tool is at once at odds with

---

[34] 579 A.2d 244 (D.C. 1990).

[35] 35 A.3d 1127 (D.C. 2012).

[36] *Lex Tex*, 579 A.2d at 249.

[37] 35 A.3d at 1134 (internal citation omitted).

the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected."[38]

It is undisputed that long-arm jurisdiction cannot be predicated on federal government contacts in the District of Columbia when its assertion is based on the defendant's transaction of business in the District under D.C. Code § 13-423(a)(1). I see no reason, and the majority opinion identifies no reason, why the government contacts exception should be unavailable when long-arm jurisdiction is asserted based on the defendant's "persistent course of conduct" in the District under § 13-423(a)(4). The rationale of the exception supports its applicability under both provisions. If anything, it would seem that the argument for the government contacts exception is stronger when § (a)(4) is invoked, for in that case (unlike under § (a)(1)) the plaintiff's claim for relief does not arise from, and typically will not be related to, the defendant's government contacts.[39]

---

[38] *Id.* at 1133 (quoting *McDonald v. Smith*, 472 U.S. 479, 487 (1985) (Brennan, J., concurring) quoting *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964)).

[39] Section (a)(4) provides for long-arm jurisdiction when the claim for relief arises from acts or omissions by the defendant *outside* the District of Columbia, which by definition are not included in the "plus factor" of the defendant's persistent course of conduct within the District. In contrast, § (a)(1) is available when the claim for relief arises from the defendant's conduct (transacting business) *in* the District.

Based on the foregoing understanding of the government contacts exception and its rationale, I would answer the D.C. Circuit's certified questions as follows.

(1)  May nonresident aliens who are citizens only of foreign countries invoke the government contacts exception?

Answer:  Yes.  The exception is intended to prevent interference with legitimate contacts with the federal government in the District, regardless of the identity of the persons engaging in those contacts.

(2)  If the first question is answered in the affirmative, must those nonresident aliens possess cognizable rights pursuant to the First Amendment generally, or any specific clause thereunder, in order to invoke the exception?

Answer:  No.  Those nonresident aliens need not possess cognizable First Amendment rights in order to invoke the exception.

(3)  Does the government contacts exception extend to efforts to influence federal policy other than direct contacts with agents, members, or instrumentalities of the federal government?

Answer:  No.  The exception is limited by its rationale to direct contacts with federal government agents, members, or instrumentalities.

(4)  If the third question is answered in the affirmative, what standard governs in determining whether activities not involving direct contacts with the federal government are covered under the exception?

Answer:  The third question is answered in the negative, so the fourth question does not arise.